IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Kerin Motors, Inc., | ) | |
| Plaintiff, | ) | No. 07-517 |
| v. | ) | (Judge Christine O.C. Miller) |
| The United States, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully requests that the Court grant summary judgment in favor of the United States upon the ground that there is no genuine issue of material fact in dispute, and the Government is entitled to judgment as a matter of law. In support of this motion, we rely upon the complaint, the defendant's Proposed Findings of Uncontroverted Fact and Appendix thereto, and the following brief.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUE

Whether Plaintiff-lessor is entitled to reimbursement of property tax payments pursuant to the terms of an alleged Reimbursement Tax Rider, when no such rider is included in the lease, but was only referenced in the lease due to a clerical error.

## STATEMENT OF THE CASE

### I. Nature of the Case

This case arises out of Kerin Motors' claim for reimbursement of property taxes it allegedly paid from 1999 through 2006 on property it leased to the Postal Service. The claim, dated December 27, 2006, requested a total of $1,844.14 in past paid property taxes. By final decision dated February 7, 2007, the contracting officer denied Kerin Motors' claim in full. Kerin Motors timely filed suit in this Court on July 10, 2007.

### II. Statement of Facts

The relevant facts are set forth in our separately filed Proposed Findings of Uncontroverted Fact. We shall briefly summarize the facts of this case here.

The Postal Service leased property from Lester and Margaret Allen, located at W/S FM 589, Sidney, Texas, to house the main Post Office for Sidney, Texas beginning in 1969.[1] (Ex. 1; 2 ¶1). New leases, typically for five year terms, along with the Postal Service's exercise of unilateral renewal options over the years, extended the Postal Service's tenancy of the property through June 30, 2005. (Ex. 1). The last lease between Ms. Allen and the Postal Service was executed in December 1998; that lease ran from July 1, 2000 through June 30, 2005. (Exs. 2 ¶6; 3).[2] In all of those leases, riders (all of which were maintenance riders) that were part of the lease were physically included with the lease. (Exs. 1; 3).

Postal Service Real Estate Specialist William McMurry, of the Dallas, Texas Facilities Service Office, prepared the lease documents for that new lease with Ms. Allen in late November 1998 to extend the Postal Service's tenancy of the Sidney Post Office from July 1,

---

[1] The Allens executed the lease in December 1968, but the lease did not begin until July 1, 1969.

[2] Lester and Margaret Allen divorced in 1982, and sole ownership of the Sidney property went to Margaret Allen. (Ex. 2 ¶3).

2000 through June 30, 2005. (Ex. 4 ¶3). The Level One Documentation that Mr. McMurry prepared (which summarized the present lease terms, the proposed agreement, a summary of negotiations, and his recommendation to the contracting officer) stated there was no change in responsibilities between the parties. (Exs. 4 ¶3; 5). After the contracting officer for the lease signed his approval on the Level One Documentation, Mr. McMurry prepared a new lease proposal to send to Ms. Allen using Postal Service software designed for that purpose. (Exs. 4 ¶¶3, 4; 5).

Among other things that Mr. McMurry had to do to prepare the new lease was to use a drop-down menu in the lease software to select riders or other attachments to include with the lease. (Ex. 4 ¶4). Mr. McMurry intentionally selected the Maintenance Rider – Lessor (M-1), but he apparently and inadvertently also selected the drop-down menu item called Reimbursement Tax Rider (T-1). (Ex.4 ¶4). Mr. McMurry did not intend to select the Reimbursement Tax Rider from the drop-down menu. (Ex. 4 ¶4). The lease agreement that Mr. McMurry mailed to Ms. Allen did not contain a Reimbursement Tax Rider. (Exs. 3; 4 ¶5). Although he does not recall removing a Reimbursement Tax Rider from the lease, it was his practice to check the pages he retrieved from the community printer and remove any inapplicable pages. (Ex. 4 ¶5). He did not notice the reference to the Reimbursement Tax Rider in Section 7 of the lease. (Ex. 4 ¶5).

Ms. Allen executed the lease on December 4, 1998. (Exs. 2 ¶6; 3). The lease Ms. Allen executed did not contain a Reimbursement Tax Rider. (Ex. 2 ¶¶6, 7). The contracting officer, Thomas Jacobs, executed the lease on December 23, 1998, thus extending the Postal Service's tenancy of the Sidney Post Office property from July 1, 2000 through June 30, 2005. (Exs. 3; 6 ¶2). The lease included two renewal options that allowed the Postal Service

to unilaterally renew the lease for two five-year terms. (Ex. 3). The annual rent for those two five-year options was agreed to in advance and is specified in the lease that Ms. Allen entered with the Postal Service. (Ex. 3). The lease filed with Clerk of Comanche County, Texas includes the Maintenance Rider, but it does not include a Reimbursement Tax Rider. (Exs. 16 ¶¶ 2-5; 17).

In approximately May 1999, Kerin Motors, Inc. purchased the Sidney Post Office property from Ms. Allen and became the successor in interest to the lease with the Postal Service. (Exs. 2 ¶9; 3, Clause A.25; 7). In May 2002, real estate specialist Kathy Bjurman reviewed the Postal Service's lease of the Sidney Post Office to prepare to renew the lease with Kerin Motors. (Ex. 8 ¶2). She discovered a reference to a Reimbursement Tax Rider in Section 7 ("Other Provisions") of the lease. (Exs. 8 ¶4; 3, Section 7). No Reimbursement Tax Rider was attached to the lease, and Ms. Bjurman knew that the prior owner had not requested that tax reimbursement be negotiated into the lease at the time Ms. Allen signed the lease renewal in December 1998. (Exs. 3; 8 ¶4). She also knew that the current owner, Kerin Motors, had never requested a tax reimbursement; therefore, she believed the reference was in error. (Ex. 8 ¶4). Ms. Bjurman placed a note in the file on May 7, 2002, which reflected her belief that the reference was in error and the reasons for her belief. (Exs. 8 ¶4; 9).

On May 13, 2002, the Postal Service exercised the first five-year renewal option provided in the lease. (Exs. 8 ¶5; 10). The new lease term was from July 1, 2005 through June 30, 2010. (Ex. 10).

From the time Kerin Motors purchased the Sidney Post Office in May 1999 until November 2006, it never submitted a property tax reimbursement request, nor did it raise the issue of property tax reimbursement to anyone in the Postal Service. (Ex. 8 ¶6). The Postal

Service received a letter from Lawrence M. Magdovitz, Kerin Motors' attorney, dated November 4, 2006, requesting reimbursement for $286.32 in real estate property taxes that Kerin Motors allegedly paid on the Sidney Post Office for the 2006 tax year. (Exs. 8 ¶7; 11). A few days later, the Postal Service received a second letter from Mr. Magdovitz, dated November 14, 2006, requesting reimbursement for $279.12 in real estate property taxes that Kerin Motors allegedly paid on the Sidney Post Office for the 2004 tax year. (Exs. 8 ¶8; 12).

By letter dated December 20, 2006, Ms. Bjurman notified Kerin Motors that its lease did not include a Reimbursement Tax Rider and that, therefore, the Postal Service would not honor any future tax reimbursement requests. (Ex. 13). The Postal Service received another letter from Mr. Magdovitz of Kerin Motors, dated December 27, 2006, that stated the Postal Service was "directed to cure [the Postal Service's] breach" by paying past tax reimbursement requests. (Ex. 14). The letter set forth additional claims for reimbursement for alleged property tax payments Kerin Motors paid from 1999 through 2006 for the Sidney Post Office. (Ex. 14). On February 7, 2007, Ms. Bjurman issued to Kerin Motors a contracting officer's final decision letter denying its claim for property tax reimbursement in its entirety. (Exs. 8 ¶12; 15).

## ARGUMENT

### I. Summary Judgment Should Be Granted For Defendant

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The moving party must identify the legal and factual bases for its motion and specify those portions of the record that demonstrate the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). The claims at issue may then be resolved on summary judgment unless the responding party establishes a factual dispute that must be tried. *Anderson*, 477 U.S. at 247-48; *Sweats Fashions*, 833 F.2d at 1562-63. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). A genuine issue of fact requires that there be a trial, but "mere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment." *First Annapolis Bancorp, Inc. v. United States*, 75 Fed.Cl. 263, 274-75 (2007) (citations omitted). Although "an erroneous grant of summary judgment may deny a party its chance to prove its case at trial[,] . . . an 'improvident denial' of summary judgment may force the parties and the court to bear the expense of an unnecessary trial." *Id.* at 275 (citing and quoting *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146-47 (Fed. Cir.1983)).

II. <u>Kerin Motor's Lease with the Postal Service Did Not Include a Reimbursement Tax Rider</u>

"Contract interpretation begins with the language of the written agreement," *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003), and the lease between Kerin Motors and the Postal Service does not contain language that obligates the Postal Service to reimburse Kerin Motors for property tax payments or any other sort of tax payments. The factually incorrect statement in Paragraph 7 of the lease, that the lease included a Reimbursement Tax Rider, was a clerical error, and the words "Reimbursement Tax Rider (T-1)" do not describe with any detail the obligations of the parties with respect to

taxes. There would be no need for a rider if those words sufficed. At most, the listing of the Reimbursement Tax Rider, coupled with the absence from the lease of the rider itself, constituted a patent ambiguity and created an obligation on Kerin Motor's part to inquire about the rider when it became a party to the lease in May 1999.

The lease did not contain a Reimbursement Tax Rider, and Kerin Motors cannot establish otherwise through its bare, unsupported allegation that "Plaintiff and Defendant included the Reimbursement Tax Rider in the Lease as set forth in Paragraph 7." Complaint ¶ 18; *see First Annapolis Bancorp* at 274-75 ("[M]ere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment."). Kerin Motors did not even attach to its complaint a copy of the centrally important Reimbursement Tax Rider, even though it attached a copy of the lease. Complaint Ex. A. Moreover, its assertion that the rider was included in the lease is based upon its incorrect assertion that "Defendant entered into a Lease Agreement with Plaintiff on December 23, 1998." Complaint ¶ 7. The falseness of that simple but important assertion is established by the "true and correct copy of said Lease," *id*., that Kerin Motors attached to its complaint. *See also*, Exs. 2 ¶6; 4 ¶8; 6 ¶2; 8 ¶3; 17. Kerin Motors' assertions about events that took place months before it purchased the property and became a party to the lease, based on fundamental factual misstatements, are just the sort of "conclusory statements, or evidence that is merely colorable or not significantly probative" that "will not defeat summary judgment." *First Annapolis Bancorp* at 274-75.

The complaint is in stark contrast to the recollections of the two parties who actually executed the lease, the documentation in the Postal Service's lease file, and the lease on file with the Comanche County Texas Clerk's Office. Margaret Allen, who leased the property to

the Postal Service for thirty years before selling it to Kerin Motors, stated unequivocally that the lease contained no Reimbursement Tax Rider (and that she did not expect it to). (Ex. 2 ¶¶6-8). The real estate specialist responsible for preparing the lease documents on behalf of the Postal Service does not recall putting together the documents for the lease in question in 1998, but based on his review of what the lease was supposed to contain, he would have removed a Reimbursement Tax Rider from the papers printed when he sifted through them, as was his practice when retrieving documents from the community printer in his office. (Ex. 4 ¶5). Moreover, he would have put the lease, with the Reimbursement Tax Rider, in the lease file if that is what Ms. Allen had returned to him. (Ex. 4 ¶7). There was no Reimbursement Tax Rider attached to the lease. Kathy Bjurman, real estate specialist and contracting officer, noticed the discrepancy between paragraph 7, "Other Provisions," and what was actually attached to the lease when she reviewed the lease to prepare to renew it in May 2002. (Ex. 8 ¶4). The copy of the lease filed with the Comanche County Clerk's Office includes the Maintenance Rider but no Reimbursement Tax Rider. (Exs. 16 ¶¶ 2-5; 17). Finally, as noted above, the Reimbursement Tax Rider is conspicuously missing from the copy of the lease Kerin Motors attached to its complaint, despite that rider's importance to this dispute.

When the Postal Service renewed the lease with Kerin Motors in 2002, Ms. Bjurman sent to Kerin Motors only the single-page "Exercise of Renewal Option," which notified Kerin Motors that the Postal Service was exercising the first of its two five-year renewal options under the lease. (Exs. 8 ¶5; 10). The "Exercise of Renewal Option" stated, other than the change in the number of renewal options remaining, "In all other respects the said contract shall remain the same and is hereby confirmed." (Ex. 10). As the successor in interest to Ms. Allen, Kerin Motors is bound by what terms were, and were not, included in the lease Ms.

Allen and the Postal Service executed in December 1998. It is beyond dispute that a Reimbursement Tax Rider was not included in the lease.

Kerin Motors cannot demonstrate entitlement to its claim for reimbursement of property taxes paid on the Sidney Post Office property without pointing to some language in the lease that describes that entitlement. There is no such language because there is no Reimbursement Tax Rider in the lease. If Kerin Motors believed a Reimbursement Tax Rider should have been included with the lease when it purchased the property in 1999, it had a duty to raise the issue then. *See Space Corp. v. United States*, 470 F.2d 536, 538 (Ct. Cl. 1972) ("It is clear that when a contractor is faced with an obvious omission, inconsistency or discrepancy of significance, he is obligated to bring the situation to the government's attention if he intends subsequently to resolve the issue in his own favor.") (citations omitted). Each previous lease for the Sidney Post Office property, beginning in 1969, had attached to it physical copies of any riders included in the lease. (Ex. 1). The absence of any Reimbursement Tax Rider attached to the lease, coupled with the clause referring to it, like the reference to a missing drawing in *Space Corp.*, was "an obvious omission, inconsistency or discrepancy of significance." *Id*. Like a bidder who is required to raise such a situation to the government before bidding, *id*., Kerin Motors was required to raise the situation to the Postal Service when it acquired the lease in May 1999. It was not permitted to wait to raise the issue until late 2006, when it decided to interpret the words "Reimbursement Tax Rider (T-1)" as entitling it to reimbursement of property taxes it allegedly paid from 1999 through 2006.[3]

---

[3] Even if the missing rider and clause referring to it constituted a patent ambiguity, "The existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation." *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (1985) (citations omitted).

CONCLUSION

In light of the argument presented above, our Proposed Findings of Uncontroverted Facts, and the Complaint, we respectively request that the Court grant our Motion for Summary Judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

THOMAS J. MARSHALL
Managing Counsel
Civil Practice Section
United States Postal Service

/s/ Stephen D. Lobaugh
STEPHEN D. LOBAUGH
Civil Practice Section
United States Postal Service
475 L'Enfant Plaza, S.W.
Room 6333
Washington, D.C. 20260-1127
(202) 268-4089

November 9, 2007