07-517
(Judge Christine O.C. Miller)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KERIN MOTORS, INC.,

Plaintiff,

V.

THE UNITED STATES,

Defendant.

**REDACTED** APPENDIX TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

PETER D. KEISLER
Assistant Attorney General
Department of Justice

THOMAS J. MARSHALL
Managing Counsel
Civil Practice Law Section
United States Postal Service

STEPHEN D. LOBAUGH
Civil Practice Section
Law Department
United States Postal Service
475 L'Enfant Plaza, S.W.
Room 6333
Washington, D.C. 20260-1127
(202) 268-4089

November 14, 2007

# LIST OF EXHIBITS


Document — Page

1. Leases and Renewals from 1969 through 2000 between Margaret Allen and United States Postal Service......1
2. Declaration of Margaret Allen......30
3. Lease between M. Allen and USPS, July 1, 2000 through June 30, 2005......34
4. Declaration of William McMurry......50
5. Level 1 Documentation for 2000-2005 Lease......54
6. Declaration of Thomas Jacobs......56
7. Novation from M. Allen to Kerin Motors, Inc......58
8. Declaration of Kathy Bjurman......64
9. Ms. Bjurman's Note to File, May 7, 2002......69
10. Lease Renewal, May 13, 2002......71
11. Letter from Lawrence Magdovitz to USPS Requesting Tax Reimbursement, Nov. 4, 2006......73
12. Letter from L. Magdovitz to USPS Requesting Tax Reimbursement, November 14, 2006......76
13. Letter from K. Bjurman to Kerin Motors, December 20, 2006......80
14. Letter from L. Magdovitz to USPS, December 27, 2006......82
15. Final Decision Letter from K. Bjurman to Kerin Motors, February 7, 2007......93
16. Declaration of Joseph Anzalone......96
17. Lease, July 1, 2000 through June 30, 2005 on File with Clerk of Comanche County, Texas......99

# Exhibit 1

Bid No. 5

POST OFFICE DEPARTMENT
# RENTAL AGREEMENT

THE UNDERSIGNED, hereinafter called the LANDLORD, hereby rents to THE UNITED STATES OF AMERICA, hereinafter called the GOVERNMENT, the premises hereinafter described for postal purposes, pursuant to the terms and conditions described herein and on the reverse hereof. (Legal Description in Paragraph 9, Addendum No. 1)

1. The premises to be rented are located at:

| (Address) | (City) | (County) | (State and ZIP Code) |
|---|---|---|---|
| Between Farm Roads 589 & 1689, North of their intersection | SIDNEY | COMANCHE | TEXAS 76474 |

upon which is or will be located a one story masonry building and which property contains or will contain areas and spaces, improvements and appurtenances as shown on Drawing(s) No. 24-32-0, two pages, (Typical Postal Facility Proposed for Sidney, Texas 76474) dated October 9, 1968, and / or described as:

| AREA | DIMENSIONS | NET SQ. FT. | AREA | DIMENSIONS | NET SQ. FT. |
|---|---|---|---|---|---|
| FIRST FLOOR | 24' x 32' | 768 | DRIVEWAY | | |
| PLATFORM | 8' x 10' | 80 | PARKING & MANEUVERING | Approx. | 2,624 |
| Offsite paving in accordance with bid drawings | | | OTHER (Describe) Approx. 1,219 SF for outside walls, sidewalks, sewage disposal area, etc. | | |

2. TERMS (in each case two (2) of the following paragraphs, "A", "B" and "C" must be deleted)

A — DELETED ... is a month-to-month tenancy for an i... ing ..., 19 ... be ... at any time by either party giving to ... written notice, any such ... LANDLORD to be directed to the Contract... DELETED

B — Fixed Term. To have and to hold said premises with their appurtenances for a term of Sixty (60) months beginning [illegible], 19 [illegible] and ending [illegible], 19 [illegible].

(2) This agreement may be renewed, at the option of the Government providing that 30 days' written notice is given before the end of the fixed term, for the following separate and consecutive terms and at the following monthly rentals:

| NO. MONTHS | AT (PER MONTH RENTAL) | NO. MONTHS | AT (PER MONTH RENTAL) | NO. MONTHS | AT (PER MONTH RENTAL) |
|---|---|---|---|---|---|
| (a) Sixty (60) | $ [redacted] | (b) Sixty (60) | $ [redacted] | (c) Sixty (60) | $ [redacted] |

C — Automatic Renewal. To have and to hold the said premises with their appurtenances for a term of one year ... DELETED ..., 19 . Thereafter this ... itself from year to year ... the end of any annual term the L... written notice of termination, ... ting Officer. The GOVERNMENT ... ement at any time by ... en notice to the LANDLORD. DELETED

3. RENTAL. The GOVERNMENT shall pay the LANDLORD monthly rental of $ [redacted] payable at the end of each month. Rent for part of a month shall be prorated. Rent checks shall be made payable to: [illegible]

See letter dated July 15, 69 from Landlord

4. The LANDLORD, unless otherwise specified herein, shall maintain the premises in good repair and tenantable condition, except in case of damage arising from the act or negligence of Government's agents or employees and, as part of the rental consideration, shall also furnish suitable flag staff, proper post office sign (legible from across the street), a ten pound multiple purpose fire extinguisher for all class fires, and the following utilities, services, equipment, etc.: LPG tank; electric meter; sewerage service; and water; and shall keep such furnished items in good condition, except the Government shall be responsible for re-charging and shell pressure testing the fire extinguisher, with Landlord remaining responsible for repairing and replacing same.

5. Other provisions agreed upon: POD Drawing No. 24-32-0, two pages, dated October 9, 1968, and attached Addendum No. 1 to POD Form 1417, two pages, are a part of this Agreement.

EXECUTED BY LANDLORD: [illegible], 19 [illegible]

By: [signature] [signature: Margaret Allen]

Lester Allen and Margaret Allen
(Print Name & Title)

Identifying Number (See Condition 11 on Reverse): [redacted]

Address: P. O. Box 14027
San Antonio, Texas 78214 (512) [illegible]
(City, State and ZIP Code) (Telephone)

ACCEPTANCE BY GOVERNMENT: July [illegible], 19 69

THE UNITED STATES OF AMERICA

By: [signature] Assistant Chief,

Title: Real Estate Branch
(Contracting Officer)

Address: [illegible]

POD Form 1417
Mar. 1966

App. 2

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

U.S. POSTAL SERVICE
EXERCISE OF RENEWAL OPTION

Strain/3851

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102

345276
SWFRE-LP

27 March 1973

Mr. Lester Allen &
Mrs. Margaret Allen
4402 Golf View
San Antonio, Texas 78223

| FACILITY | LOCATION |
|---|---|
| Main Post Office | North of Intersection of Farm Roads 589 & 1689 in SIDNEY, TEXAS |

| TYPE EXISTING CONTRACT | DATE | OPTIONS AVAILABLE (Number and Years) |
|---|---|---|
| Rental | 14 July 1969 | Three (3) 5-Year |

Pursuant to the contract with you covering this facility, the Postal Service hereby exercises its option to renew said contract as follows:

| TERM (Years) | FROM (Date) | ~~XX~~ THRU (Date) | ANNUAL RATE |
|---|---|---|---|
| Five (5) | 1 July 1974 | 30 June 1979 | $ 1,440.00 |

In all other respects the said contract shall remain the same and is hereby confirmed.

REMARKS

Exercising first of three 5-Year Renewal Options. Increase in rental. (Rental)

Copies furnished:
Manager Dallas District
P. O. Box 3
Dallas, TX 75221

Postmaster
Sidney, TX 76474

WOOD
BOBO
TEEL
COTTRELL
MAIL
RE LEASING

| DATE | SIGNATURE | TITLE |
|---|---|---|
| 27 March 1973 | [signature] | MICHAEL B. COTTRELL Chief, Real Estate Division |

PS Form 7462
July 1971

GPO 926.422

U.S. POSTAL SERVICE

# EXERCISE OF RENEWAL OPTION

Dallas Field Real Estate and Buildings Office
P. O. Drawer 239
Dallas, TX 75221

Lester Allen and
Margaret Allen
4402 Golf View
San Antonio, TX 78223

Certified Mail No. 766964

| FACILITY | | LOCATION | |
|---|---|---|---|
| Main Post Office | | Sidney, TX 76474 | |
| TYPE EXISTING CONTRACT: ☐ LEASE ☒ RENTAL | DATE: July 14, 1969 | OPTIONS AVAILABLE *(Number and Years)*: Two (2) Five-Year Options | |

Pursuant to the contract with you covering this facility, the Postal Service hereby exercises its option to renew said contract as follows:

| TERM *(Years)* | FROM *(Date)* | TO *(Date)* | ANNUAL RATE |
|---|---|---|---|
| Five (5) | July 1, 1979 | June 30, 1984 | $ 1,440.00 |

In all other respects the said contract shall remain the same and is hereby confirmed.

REMARKS

cc: ETD (2)

| DATE | SIGNATURE | TITLE |
|---|---|---|
| August 9, 1978 | William H. Brady, Jr. | Field Supervisor, Real Estate |

Form 7462
1973

U. S. POSTAL SERVICE
LEASE AMENDMENT

THIS AMENDMENT is made by and between LESTER AND MARGARET L. ALLEN hereinafter referred to as "Lessor", and the UNITED STATES POSTAL SERVICE, hereinafter referred to as "Postal Service".

WHEREAS, by lease dated 07-14-1969 , the Lessor leased to the Postal Service certain premises known as MAIN OFFICE and located at
SIDNEY TX 76471,
more particularly described on exhibit A attached hereto and made a part hereof,

and

WHEREAS, it has been mutually agreed between the Lessor and the Postal Service that certain changes be made in the terms and conditions of the aforesaid lease which are of mutual benefit to the Lessor and to the Postal Service,

NOW, THEREFORE, in consideration of the mutual covenants of the parties hereto, it is agreed as follows:

1. The Lessor and the Postal Service hereby amend the lease by substitution of the following riders in lieu of all prior agreements regarding responsibility for the items covered by the riders:

   Maintenance Rider

2. The Lessor agrees as a condition precedent to the Postal Service's assumption of obligations to pay for the maintenance, utilities or taxes, as provided for in this amendment, to perform the required maintenance items, as listed on exhibit "B", attached hereto, at the Lessor's sole cost and expense.

3. The Lessor shall be and remain responsible for correcting all items of deferred maintenance existing at the time this amendment becomes effective whether or not such items are listed in this amendment, providing the Postal Service identifies such items of deferred maintenance within twelve months of the effective date of the Postal Service's assumption of obligations to pay for maintenance, utilities or taxes under this amendment.

4. In further consideration of this amendment the Lessor agrees that the annual rent under this lease shall be adjusted downward, and that, commencing with the effective date of this amendment, and continuing until the beginning of any future option period, the annual rent will be: $ 1,352

5. It is further agreed that, in the event the Postal Service exercises any available renewal options under the present contract, the rent for the option periods will be as follows:

For period 07-01-1984 to 06-30-1989 $ 1,352

6. By execution of this amendment, the Lessor hereby grants the Postal Service an option to purchase the fee simple title to the leased premises at any time during the remaining term of this lease, including the term of any lease renewal options subsequently exercised, by providing written notice of the exercise of the option to purchase to the Lessor. The purchase price will be at the fair market value of the premises at the date of the exercise of this option, unencumbered by the Postal Service lease, as determined by Postal Service appraisal. If the Lessor disagrees with the Postal Service appraisal, the Lessor shall have a period of one hundred twenty (120) days to obtain an appraisal at the Lessor's expense. Thereafter, the parties will attempt to negotiate a final purchase price. If agreement on price cannot be reached, the purchase price will be determined by an appraiser selected by the Lessor from a list of three appraisers furnished by the Postal Service. Each of the three appraisers must be a designated appraiser of a recognized national professional appraisal organization or society. The cost of the third appraisal will be equally shared between the Lessor and the Postal Service.

7. If a price is determined by a third appraisal as provided in paragraph 6 of this amendment, that price will be binding on both parties, except that the Postal Service may elect not to purchase or to purchase at the price of the higher of the two prior appraisals if the price of the third appraisal exceeds the price of the higher of the two prior appraisals and the Lessor may elect not to sell or to sell at the price of the lower of the two prior appraisals if the price of the third appraisal is below the price of the lower of the prior two appraisals. If the Postal Service elects not to buy or the Lessor elects not to sell under the foregoing provision, the lease as amended will continue in full force and effect, and the Postal Service will not be allowed again to exercise its option to purchase for twelve (12) months from the date of the third appraisal and then only on condition that it agrees to pay the reasonable costs of any Lessor appraisal.

8. This option is in addition to any other purchase options available under the lease of this property. If the Postal Service exercises this option to purchase, the Lessor will convey the property by good and sufficient warranty deed, free and clear of all encumbrances. The Postal Service will obtain its own title evidence and surveys, and will reimburse the Lessor for reasonable expenses for recording fees, transfer taxes, mortgage prepayment costs, and similar expenses incidental to closing, not including the cost to the Lessor of any appraisals obtained under paragragh 6 of this amendment.

9. Settlement will be scheduled to take place within ninety (90) days after the purchase price has been determined. The purchase price will be paid as follows: (a) monthly payments in the amount of the current rent as of the date of settlement for the period of months of the remaining lease term (not including the period of any option not yet excoised), or eighty-four (84) months, whichever is the longer period; (b) the balance of the purchase price at the time of closing. Payments are of principal only, with no interest due the Lessor.

10. Within thirty (30) days after the date of execution, the Lessor will record this lease amendment at the Lessor's expense and immediately thereafter provide evidence of the recording to the Postal Service.

11. All provisions of the aforementioned lease unaffected by this amendment are hereby confirmed and shall remain the same.

12. The Postal Service's assumption of obligations to pay for maintenance, utilities or taxes under this amendment shall be effective on the first day of the month following completion by the Lessor and acceptance by the Postal Service of the deferred maintenance work identified in Exhibit "B".

IN WITNESS WHEREOF, the parties hereto have signed and sealed these presents this 8 day of March, 19 82.

WITNESSES:

Gerald L. Jones ______ Lester Allen

Lydia M Medina ______ 512-534-0676

______ Margaret L. Allen

512-735-6880

(Telephone no. of Lessor)

ACCEPTED by the undersigned for the Postal Service this 5 day of August, 19 82.

WITNESS:

______

THE UNITED STATES POSTAL SERVICE

BY: ______

TITLE: William H. ..., Jr. Manager, Real Estate Branch

(Contracting Officer)

NOTE: Certain information provided by the Lessor formed the basis of this Agreement. Lessors are cautioned that the penalty for making false statements or representations is contained in 18 U.S.C. Section 1001.

# MAINTENANCE RIDER

1. Obligations of the Postal Service

The Postal Service shall keep the demised premises in good repair and tenantable condition, except that the Postal Service will not be obligated to make any repairs which are the responsibility of the Lessor as specified in Paragraph 2 of this rider. The term "demised premises" as used in this paragraph includes the improvements thereon and the appurtenances thereto, and any and all equipment and fixtures furnished or to be furnished by the Lessor under this lease. The Postal Service's responsibilities as stated herein shall be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises, equipment, fixtures, improvements and appurtenances in proper condition.

2. Obligations of the Lessor

The Lessor will be responsible for all structural repairs to the demised premises; for repairs resulting from Acts of God, or acts of the public enemy; for repairs to all common or joint use areas that may be included as part of this lease agreement; for repairs resulting from defects in building construction or installation of equipment, fixtures and appurtenances furnished by the Lessor; for repairs resulting from fire or other casualty or calamity, unless such damage arises from the act or the negligence of the Postal Service's agents or employees; and for any repairs in postal maintained areas made necessary by any failure of a facility element for which the Lessor is responsible. Structural repairs as used in this paragraph shall be limited to the foundation, bearing walls, floors, excluding the floor covering, column supports, and the roof system, including but not limited to roof covering, flashing, and insulation.

FORM OF ACKNOWLEDGMENT FOR HUSBAND AND WIFE

State of TEXAS )
County of BEXAR ) SS:

Personally appeared before me, a Notary Public in and for the County and State aforesaid, LESTER ALLEN who is known to me to be the same person who executed the foregoing lease, and who acknowledged that he signed, sealed, and delivered the same as his free and voluntary act for the uses and purposes therein set forth.

And on the same day also voluntarily appeared before me MARGARET L. ALLEN, wife of the said LESTER ALLEN to me well known as the person signing said lease, and in the absence of LESTER ALLEN, said MARGARET L. ALLEN declared that she had of her own free will signed and sealed the foregoing lease for the purposes therein contained and set forth, including the release of homestead and dower therein, of which she had full knowledge, without compulsion or undue influence of her said husband.

Witness my hand and notarial seal, in the County and State aforesaid, this 8 day of MARCH, 19 82.

Mary Farris
Notary Public

(Notarial Seal)

My commission expires 09-1985


PS Form 7449-C
Dec. 1974
GPO 889-955

# FORM OF ACKNOWLEDGMENT FOR INDIVIDUALS

State of Texas )
) SS:
County of Dallas )

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

William H. Brady, Jr., Contracting Officer, U. S. Postal Service

*(Identify individual party to the lease)*

who is known to me to be the same person who executed the foregoing lease, and who acknowledged that he *(he)(she)* signed, sealed and delivered the same as his *(his)(her)* free and voluntary act for the uses and purposes therein set forth.

Witness my hand and notarial seal, in the County and State aforesaid, this 5 day of August, 19 82.

Elena Stewart

Elena Stewart *Notary Public*

(Notarial Seal)

My commission expires 11-13-85

**U.S. Postal Service**

# LEASE
FOR
# POSTAL FACILITY

Postal Facility: Sidney, TX 76474 - MPO

Lessor: Lester Allen and
Margaret Allen
4402 Golf View
San Antonio, TX 78223

Date: August 5, 1982

Term: Five (5) years.

Beginning: August 1, 1982

Rent: $ 1,352.00 per annum.

Lease includes: One, Five-Year Option

AFTER RECORDING, Return to:
Dallas Field Real Estate & Bldgs. Office
U. S. Postal Service
P. O. Drawer 239
Dallas, TX 75221-0239

U.S. POSTAL SERVICE

# EXERCISE OF RENEWAL OPTION

Margaret Allen
1131 Babcock #2
San Antonio, TX 78201

Certified Mail 2487922

| FACILITY | | LOCATION | |
|---|---|---|---|
| Main Post Office | | Sidney, TX 76474 | |
| TYPE EXISTING CONTRACT | DATE | OPTIONS AVAILABLE *(Number and Years)* | |
| ☒ LEASE * ☐ RENTAL | July 14, 1969 | One (1) Five-Year | |

Pursuant to the contract with you covering this facility, the Postal Service hereby exercises its option to renew said contract as follows:

| TERM *(Years)* | FROM *(Date)* | TO *(Date)* | ANNUAL RATE |
|---|---|---|---|
| Five (5) | July 1, 1984 | June 30, 1989 | $ 1,352.00 |

In all other respects the said contract shall remain the same and is hereby confirmed.

REMARKS

*Lease Amendment dated August 5, 1982

| DATE | SIGNATURE | TITLE |
|---|---|---|
| March 2, 1983 | [signature] | William H. Brady, Jr.<br>Manager, Real Estate Branch |

PS Form 7462
Nov. 1973

U.S. Postal Service

# SHORT FORM LEASE

Main Office, Station, Branch, Etc.
Main Office

THE UNDERSIGNED, hereinafter called the Lessor, hereby leases to the United States Postal Service, hereinafter called the Postal Service, the premises hereinafter described, pursuant to the terms and conditions described herein and contained in PS Form 7417-A, General Conditions to Short Form Lease, attached hereto.

1. **Location.** The premises are located at: North of intersection of FM 589 and FM 1689
*(Number and Street)*

Sidney *(City)* Comanche *(County)* Texas *(State)* 76474-9998 *(ZIP + 4)*

upon which is or will be located a one story masonry building and which property contains or will contain areas, spaces, improvements, and appurtenances as follows:

A tract of land north of the intersection of Farm Roads 589 and 1689 in Sidney, Comanche County, Texas, identified as Abstract 510, HTBRRCO, South 50 feet of 4.0325, upon which is situated the Sidney, Texas Post Office. Page 1A

| Area | Dimensions | Net Sq. Feet | Area | Dimensions | Net Sq. Feet |
|---|---|---|---|---|---|
| First Floor | 24' x 32' | 768 | Driveway | | |
| Platform | 8' x 10' | 80 | Parking and Maneuvering | Approx. | 2,624 |
| Vehicle Storage *(No. of Units)* | -- | -- | Other *(Describe)* | | |

2. **Terms.** In each case, two (2) of the following paragraphs "A," "B," and "C" *must* be deleted.

A ~~Month-to-Month. This is a month-to-month tenancy for an indefinite period beginning __________, 19______, and may be terminated at any time by either party giving to the other ... notice; any such notice given by Lessor to be directed to the Contracting Officer.~~ DELETED

B Fixed-Term. To have and to hold said premises with its appurtenances for a term of thirty six (36) months beginning July 1, 19 89, and ending June 30, 19 92.

(1) The Postal Service may terminate this agreement at any time by giving thirty days written notice to the Lessor.

(2) This agreement may be renewed, at the option of the Postal Service, for the following separate and consecutive terms and at the following monthly rentals provided notice be given in writing to the Lessor at least 30 days before the end of the fixed term and each renewal term provided herein.

| No. of Months | At *(Per Month Rental)* | No. of Months | At *(Per Month Rental)* | No. of Months | At *(Per Month Rental)* |
|---|---|---|---|---|---|
| (a.) 36 | $ 112.67 | (b.) D E L E T E D | | (c.) D E L E T E D | |

C ~~Automatic Renewal. To have and to hold the said premises with its appurtenances for a term of one year beginning __________, 19______. Thereafter this agreement shall renew itself from year to year unless ... gives written notice of termination thirty days before the end of any annual term, delivered to the Contracting Officer. The Postal ... this agreement at any time by giving thirty days written notice to the Lessor.~~ DELETED

3. **Rental.** The Postal Service shall pay the Lessor monthly rental of $ 112.67 payable at the end of each month. Rent for part of a month shall be prorated. Rent checks shall be made payable to:
Lessors

4. Lessor, as part of the rental consideration shall furnish the following utilities, services, and equipment:
Taxes; sewerage service; electric, water, gas meters as now installed, LPG tank.

5. **Other Provisions.** The following additional provisions, modifications, riders, layouts and/or forms were agreed upon prior to execution and made a part hereof:
Addendum "A", Page 2.
Maintenance Rider, Page 3.

6. The following paragraphs were *deleted* before signing:
Paragraphs 2A, 2B (2)(b) and (c), and 2C.

7. The undersigned has completed and attached hereto Form 7319-B, Representations and Certifications, and Form 7319-C, Representations and Certifications (Business Data).

EXECUTED BY LESSOR Feb 22, 19 89

By: Margaret Allen *(Signature)*

Margaret Allen *(Print or Type Name and Title)*

Identifying No.: [redacted]

Address: 6727 Forest Dell

San Antonio, TX 78240-3433 *(City, State, and ZIP + 4)* 512 680-9525 *(Telephone)*

Witness: 14 Lynne M Lyons

ACCEPTANCE BY POSTAL SERVICE March 6, 19 89

By: Bill Wright *(Signature)*

Bill Wright

Title: Real Estate Specialist, Principal *(Contracting Officer)*

Address: P. O. Box 667180

Dallas, TX 75266-7180 *(City, State, and ZIP + 4)* (214) 819-7248 *(Telephone)*

Addendum "A"

Sidney, TX 76474-9998 - Main Post Office

1. It is understood and agreed that if a public water system is installed during the period of the agreement, and such system is available to the property covered by the agreement, the Lessor will provide approved connections to the public water system, including furnishing and installing a water meter if water is not billed on a flat rate basis; and effective with the date of installation and connection to the public water system, the Lessor will no longer be responsible for payment of water bills.

2. It is understood and agreed that if a public sanitary sewerage system is installed during the period of agreement, and such system is available to the property covered by the agreement, the Lessor will provide the plumbing fixtures with approved connections to the public sanitary sewerage system; and effective with the date of installation of such connections, the Lessor will no longer be responsible for payment of and sewerage service charges.

3. It is understood and agreed that if a city wide system for distribution of natural gas is installed during the period of the agreement, and such system is available to the property covered by the agreement, the Lessor will provide approved connections to the natural gas system, including furnishing and installing a gas meter; and effective with the date of installation and connection to the natural gas system, the Lessor will no longer be required to supply and maintain the LPG system.

4. By executing this Lease, the Lessor certifies that the demised premises contains no friable asbestos-containing materials and/or PCB's; that the premises has never been used as a dump for "hazardous and/or toxic wastes" as that term is defined by the Environmental Protection Agency and that he/it is unaware of any such materials having been placed on such premises, to the best of his knowledge and belief.

5. Lessor further agrees that should it be discovered that friable asbestos-containing materials, PCB's, and hazardous and/or toxic wastes, as mentioned above, are found to be on the premises, the Lessor accepts responsibility for having the same removed within a reasonable time and that the Postal Service may, at its option, elect to terminate said lease by giving the Bidder/Lessor a lease termination notice within 120 days from the date the Postal Service discovers (learns of) the existence of such materials on said premises.

Sidney, TX - Main Office

Paragraph ________

# MAINTENANCE RIDER

(a) The term "demised premises" as used in this section includes the premises themselves, the improvements and appurtenances to such premises, all equipment and fixtures furnished, or to be furnished, by the Lessor under this lease, and all common or joint use areas that are part of this lease.

(b) The Postal Service is responsible for ordinary repairs to, and maintenance of, the demised premises except for those repairs that are specifically made the responsibility of the Lessor in this lease. The Postal Service's responsibilities as stated herein will be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises in proper condition.

(c) The Lessor is responsible for:

(1) Repairs to all common or joint use areas that may be included as part of this lease agreement;

(2) All structural repairs to the demised premises. The term "structural repairs" as used in this subsection is limited to the foundation, bearing walls, floors *(not including floor covering),* column supports, and all parts of the roof system *(including, but not limited to, roof covering, flashing, and insulation);*

(3) Repairs resulting from Acts of God or of a public enemy;

(4) Repairs resulting from defects in building construction or installation of equipment, fixtures, or appurtenances furnished by the Lessor;

(5) Repairs resulting from fire or other casualties, unless such casualties were caused by the acts or negligence of employees or agents of the Postal Service; and

(6) Any ordinary repairs by the Postal Service which were made necessary by the failure of any element for which the Lessor is responsible.

(d) When the need arises for repairs which are the responsibility of the Lessor, the Postal Service will *(except in emergencies)* give the Lessor written notice of the needed repair and will specify a reasonable deadline for completion of the work. A copy of such notice will also be sent by certified or registered mail to Lessor's mortgagee and assignee of monies due or to become due pursuant to this lease. These names will have been furnished to the Postal Service by the Lessor. If none of these parties *(Lessor, mortgagee, or assignee)* proceed with the work with such diligence so as to ensure completion within the time specified in the notice *(or any extension thereof granted at the sole discretion of the Postal Service)* or actually fails to complete the work within said time, the Postal Service has the right to perform the work, by contract or otherwise, and withhold the cost of such work from payments due under this lease. Alternatively, the Postal Service may, at its sole discretion, cancel this lease. In addition, the Postal Service may proportionally abate the rent for any period the premises, or any part thereof, are determined by the Postal Service to have been rendered unavailable to it by reason of such condition.

(e) The Lessor shall be responsible for complete maintenance of the individual water well and the sanitary septic system for the life of the lease, or until the building is connected to public water and/or sewer systems in accordance with the lease.

App. 16

Sidney, TX - Main Office

# FORM OF ACKNOWLEDGMENT FOR INDIVIDUALS

State of TEXAS )
) ss:
County of BEXAR )

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

Margaret Allen
*(Identify individual party to the lease)*

who is known to me to be the same person who executed the foregoing lease, and who acknowledged that

she *(he)(she)* signed, sealed and delivered the same as her *(his) (her)*

free and voluntary act for the uses and purposes therein set forth.

Witness my hand and notarial seal, in the County and State aforesaid, this 15th day of March, 1989.

Patricia A. Iverson
*Notary Public*

**(Notarial Seal)**

My commission expires 7-23-89

PS Form **7449-B,** October 1986

Sidney, TX - Main Office

## FORM OF ACKNOWLEDGMENT FOR INDIVIDUALS

State of Texas )
County of Dallas ) SS:

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

Bill Wright, Real Estate Specialist, Principal, Contracting Officer
*(Identify individual party to the lease)*

who is known to me to be the same person who executed the foregoing lease, and who acknowledged that

he *(he)(she)* signed, sealed and delivered the same as his *(his)(her)*

free and voluntary act for the uses and purposes therein set forth.

Witness my hand and notarial seal, in the County and State aforesaid, this 6 day of March, 19 89.

(Notarial Seal)

NOTARY PUBLIC STATE OF TEXAS

Mary-Ellen Bothwell

Mary-Ellen Bothwell *Notary Public*
State of Texas

My commission expires 11/22/89



PS Form 7449-B
Dec. 1974

GPO 889-957

U.S. Postal Service

# LEASE

FOR

# POSTAL FACILITY

**Postal Facility** Sidney, TX - Main Office

**Lessor** Margaret Allen

**Date** February 6, 1989

**Term** Three **years.**

**Beginning** July 1, 1989

**Rent: $** 1,352.04 **per annum.**

**Lease includes:**

AFTER RECORDING, PLEASE RETURN TO:

Dallas Facilities Service Office
U. S. Postal Service
P. O. Box 667180
Dallas, TX 75266-7180

# U.S. Postal Service
## Exercise of Renewal Option

Unit/Post Office Name & Address: MAIN OFFICE - W/S FM 589
SIDNEY, TX 76474-9998

TO:
MARGARET ALLEN
11339 EL SENDERO
SAN ANTONIO, TX 78233-6929

Issuing Office:
Facilities Service Office
Suite 400
7800 N. Stemmons Freeway
Dallas, TX 75427-4217

| Date of Existing Contract | Options Available (Number and Years) |
|---|---|
| 03/06/1989 | 1 Option(s) covering 03 Years |

Pursuant to the contract with you covering this facility, the Postal Service hereby exercises its option to renew said contract as follows:

| Term (Years) | From (Date) | To (Date) | Annual Rate |
|---|---|---|---|
| 3 | 07/01/1992 | 06/30/1995 | $1,352.04 |

There is/are 0 renewal option(s) remaining. In all other respects the said contract shall remain the same and is hereby confirmed.

Remarks

Exercising three-year renewal option.

cc: Division, Ft. Worth MSC, PM

CERTIFIED MAIL #P660-639-787

| Date | Name and Title | Signature |
|---|---|---|
| 09/10/1991 | Billy G. Wright<br>Acting RE Branch Mgr | Billy G. Wright |

PS Form 7462X, September 1990 - 20260-6425

# U.S. Postal Service
## Facilities Department
## Lease

Unit/Post Office Name & Address: MAIN OFFICE - W/S FM 589 SIDNEY, TX 76474-9998 (488335-001) COMANCHE COUNTY

This LEASE, made and entered into by and between MARGARET ALLEN hereinafter called the Lessor, and the United States Postal Service, hereinafter called the Postal Service:

In consideration of the mutual promises set forth and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties covenant and agree as follows:

1. The Lessor hereby leases to the Postal Service and the Postal Service leases from the Lessor the following premises, hereinafter legally described in paragraph 9, in accordance with the terms and conditions described herein and contained in the 'General Conditions to U.S. Postal Service Lease,' Section A, attached hereto and made a part hereof.

   Upon which is a one-story masonry building and which property contains areas, spaces, improvements, and appurtenances as follows:

| AREA | SQ. FEET |
|---|---|
| Net Floor Space | 768 |
| Platform | 80 |
| Parking & Maneuvering | 2,624 |
| Other: | |
| Driveway | |
| Landscaping | |
| Sidewalks | |
| Total Site Area | 4,691 |

2. RENTAL: The Postal Service will pay the Lessor an annual rental of: $3,600.00

   payable in equal installments at the end of each calendar month. Rent for a part of a month will be prorated. Rent checks shall be disbursed as follows:

   payable to: MARGARET ALLEN
   31825 RICE ROAD
   BULVERDE, TX 78163-1769

   unless the Contracting Officer is notified, in writing by Lessor, of any change in payee or address at least sixty (60) days before the effective date of the change.

3. TO HAVE AND TO HOLD the said premises with their appurtenances:

   FIXED TERM: The term beginning 07/01/1995 and ending 06/30/2000 for a total of 5 years.

# U.S. Postal Service
## Facilities Department
## Lease

UNITED STATES POSTAL SERVICE

Unit/Post Office Name & Address: MAIN OFFICE - W/S FM 589
SIDNEY, TX 76474-9998

(488335-001)
COMANCHE COUNTY

4. RENEWAL OPTIONS: None

5. TERMINATION:
None

6. UTILITIES, SERVICES, AND EQUIPMENT: Lessor, as part of the rental consideration, shall furnish the following utilities, services and equipment:
(See Lessor Obligations of General Conditions (A.24) and/or attached addendum for definitions.)
Heating System, Air Conditioning Equipment, Light Fixtures, Sewerage System, Electrical System, Water System.

7. OTHER PROVISIONS: The following additional provisions, modifications, riders, layouts and/or forms were agreed upon prior to execution and made a part hereof:
Maintenance Rider - Lessor (M-1),
Postal Service is responsible for all separately metered utility bills.
Lessor is responsible for all maintenance and real estate taxes.
The Lessor is responsible for the prevention and eradication of termites and other cellulose/wood-infesting insects and for any inspections related thereto, and for repair of any and all damage to the premises which may result from infestation by any such insects.

8. The undersigned has completed the 'Representations and Certifications.' (See Section B).

9. LEGAL DESCRIPTION:
A tract of land north of insection of Farm Raods 589 and 1689 in Sidney, Comanche County, Texas, identified as Abstract 510, HTBRRCO, south 50 ft of 4.0325, upon which is situated the Sidney, Texas Post Office.

# U.S. Postal Service
## Facilities Department
## Lease

Unit/Post Office Name & Address: MAIN OFFICE - W/S FM 589
SIDNEY, TX 76474-9998

(488335-001)
COMANCHE COUNTY

EXECUTED BY LESSOR this 7th day of July, 1993.

**ALL INDIVIDUAL LESSORS/OFFERORS AND SPOUSE MUST SIGN**

Margaret Allen
Margaret Allen

Lessor: Address 31825 RICE ROAD BULVERDE TX 78163-1769
Telephone No. ____________
Taxpayer Id No. [redacted]

Witness

Witness

**ACCEPTANCE BY THE POSTAL SERVICE**

Date 7/29/93

By ____________
Contracting Officer
JOHN LOGAN CONTRACTING OFFICER
FACILITIES SERVICE OFFICE PO BOX 667180
DALLAS TX 75266-7180

# U.S. Postal Service
## Facilities Department
## Form of Acknowledgment for Individuals

UNITED STATES POSTAL SERVICE

STATE OF Texas

SS:

COUNTY OF Bexar

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

Margaret Allen
(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

who is known to me to be the same person(s) who executed the foregoing lease, and who acknowledged that said person(s) signed, sealed and delivered the same as said person(s)'s free and voluntary act for the uses and purposes therein set forth.

Witness my hand and notarial seal, in the County and State aforesaid, this 7th day of July, 1993.

NOTARIAL SEAL

DONNA J. SOHN
Notary Public
State of Texas
My commission expires 07-30-94

Donna J. Sohn
Notary Public

My commission expires ______________

# U.S. Postal Service
## Facilities Department
## Form of Acknowledgment for Contracting Officer

UNITED STATES POSTAL SERVICE

STATE OF TEXAS

SS:

COUNTY/PARISH OF DALLAS

Personally appeared before me, a Notary Public in and for the County/Parish and State aforesaid,

JOHN A. LOGAN
(Identify individual party to the lease)

known to be the CONTRACTING OFFICER
TEAM LEADER

and to be the same person who executed the foregoing Lease, who deposes and says that he signed his name thereto, by authority of said Postal Service, for the purposes set forth, and as his own free and voluntary act.

Witness my hand and notarial seal, in the County/Parish and State aforesaid,
this 29 day of July, 1993.

NOTARIAL SEAL

NOTARY PUBLIC STATE OF TEXAS

Mary-Ellen Bothwell
Mary-Ellen Bothwell
Notary Public, State of Texas

My commission expires 11/22/93

# U.S. Postal Service
## Facilities Department
## Maintenance Rider - Lessor Responsibility

UNITED STATES POSTAL SERVICE

a. The Lessor shall, except as otherwise specified herein and except for damage resulting from the negligence of Postal Service agents or employees, maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, whether severable or non-severable, furnished by the Lessor under this Lease, in good repair and tenantable condition. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times, and upon reasonable notice to the facility manager, enter and inspect the same and make any necessary repairs thereto. Additionally, the Lessor shall designate maintenance repairmen for electrical emergencies, plumbing emergencies and for heating, ventilating and air conditioning and other emergencies (windows, doors, locks and other elements), who may be called by the Postal Service in the event of any emergency situation involving maintenance when the Lessor or the Lessor's agent cannot be contacted within a reasonable time.

b. Lessor is responsible for inspection, prevention and eradication of termites and any other wood eating insects and for repairs of any damage resulting therefrom.

c. Lessor shall repaint the interior (including but not limited to the walls and ceilings) and exterior at least once every five (5) years (unless the five (5) year period is specifically extended in writing by the Contracting Officer) and at any other time that painting may become necessary as a result of fire or other casualty.

d. If a heating system is furnished by Lessor under this Lease, such system must be maintained by Lessor at all times so as to be capable of providing a uniform temperature of at least 65 degrees Fahrenheit in all enclosed portions of the demised premises.

e. If air-conditioning equipment is furnished by Lessor under this Lease, such equipment must be maintained by Lessor at all times so as to be capable of maintaining a uniform temperature of no greater then 78 degrees Fahrenheit in all enclosed portions of the premises.

f. Any heating boilers, hotwater supply boilers, unfired pressure vessels, elevators, escalators and dumbwaiters provided by Lessor as part of the leased premises or operated by the Lessor in conjunction with the leased premises, shall be operated and maintained by the Lessor in accordance with ANSI/ASME A17.I, Safety Code for Elevators, Escalators, Dumbwaiters, and Moving Walks; ANSI/ASME A17.2, Elevator Inspectors Manual; ANSI/ASME A17.3, Safety Code for Existing Elevators and Escalators; ASME Boiler and Pressure Vessel Code; National Electric Code; and/or ASME Safety Code No. CSD-1, Controls and Safety Devices for Automatically Fired Boilers, as applicable, or as required by local ordinances. Current safety certificates issued by an organization recognized by the National Board of boiler and Pressure Vessel Inspectors or a Federal, State or municipal authority which has adopted the American National Standard Institute/American Society of Mechanical Engineers (ANSI/ASME) Boiler and Vessel Code, must be provided by the Lessor for boilers and unfired pressure vessels. Current safety certificates for elevators, dumbwaiters and escalators must be issued by an organization authorized to inspect in accordance with the ANSI/ASME Safety Code for Elevators, Dumbwaiters and Escalators or appropriate Federal, state or municipal authority. In the event local jurisdictions do not require periodic inspection of such equipment, the Postal Service shall have the right to conduct inspections in accordance with the aforesaid codes, and may issue safety certificates as appropriate.

g. Whenever there is a need for maintenance or a repair which is the Lessor's obligation under this Maintenance Rider or for restoration of the premises or any part thereof to a state of good repair and tenantable condition, the Postal Service shall give the Lessor written notice thereof, specifying a time for completion of the work which is reasonable and commensurate with the nature of the work required. A copy of any such notice shall be sent by certified or registered mail to the Lessor's mortgagee and any assignee of monies due or to become due under this Lease whose names and addresses have been furnished to the Postal Service by the Lessor. If the Lessor (or the mortgagee or the assignee, on behalf of the Lessor) fails to prosecute the work with such diligence as will ensure its completion within the time specified in the written notice (or any extension thereof as may be granted at the sole discretion of the Postal Service) or fails to complete the work within said time, the Postal Service shall have the right to perform the work by contract or otherwise and withhold the cost thereof (which may include administrative cost and/or interest) from payments due or to become due under this Lease. In addition, the Postal Service may proportionally abate the rent for any period the premises, or any part thereof, are determined by the Postal Service to have been rendered untenantable to it by reason of such condition. Alternatively, the Postal Service may, if the demised premises are determined to be unfit for occupancy, at its sole discretion, cancel this Lease, without liability.

1906

FACILITIES SERVICE OFFICE
P.O. Box 667180
Dallas, TX 75266-7180

12 13 14 15 SEP 1993 RECEIVED

MEMORANDUM OF LEASE

Lease: Main Office
Sidney, TX 76474-9998

Lessor: Margaret Allen
31825 Rice Road
Bulverde, TX 78163-1769

Lessee: United States Postal Service

The LEASE made and entered into the 29th day of July, 1993, by and between Lessor and the United States Postal Service.

The Lessor hereby leases to the United States Postal Service the following described premises, viz: A one-story masonry building which contains 768 square feet net floor space, 80 square feet of platform, and 2,624 square feet of parking & maneuvering, located at W/S FM 589, Sidney, Comanche County, TX.

To have and to hold said premises for a term beginning July 1, 1995, and ending June 30, 2000. There are no renewal options available.

Lessor: Margaret Allen

Margaret Allen

Lessee: UNITED STATES POSTAL SERVICE

Larry L. Andrews
Contracting Officer

App.
27

ORIGINAL

POSTAL FACILITY: Sidney, TX 76474-9998 - Main Office

FORM OF ACKNOWLEDGMENT FOR INDIVIDUAL

THE STATE OF TEXAS )
)
COUNTY OF BEXAR )

This instrument was acknowledged before me on this 12 day of August 1993 by MARGARET ALLEN who is known to me to be the same person who executed the foregoing instrument, and who acknowledged that (he/she) SHE signed, sealed and delivered the same as her free and voluntary act for the uses and purposes therein set forth.

[SEAL]

Linda B Niles

Notary Public,

My commission expires:

LINDA B. NILES
Notary Public, State of Texas
My Commission Expires 06/10/94

---

INDIVIDUAL ACKNOWLEDGMENT

THE STATE OF TEXAS )
)
COUNTY OF DALLAS )

This instrument was acknowledged before me on this 23 day of August 1993 by Larry L. Andrews, as Contracting Officer for the United States Postal Service, an Independent Establishment of the Executive Branch of the United States Government, on behalf of the said United States Postal Service and in his capacity herein stated.

[SEAL]

Vicky Williams

Vicky Williams
Notary Public, State of Texas

My commission expires: 07/12/97

VICKY WILLIAMS
MY COMMISSION EXPIRES
July 12, 1997



ORIGINAL

THE STATE OF TEXAS }
County of COMANCHE }

I, BETTY CONWAY, County Clerk, in and for Comanche County, Texas do hereby certify that the foregoing instrument of writing with its certificate of authentication, was filed in my office on the 1st day of Sept. 19 93, at 10:15 o'clock A. M. and duly recorded on the 2nd day of Sept. 19 93 at 9:00 o'clock A. M., in the Deed records of said County, Volume 712 Page 253

BETTY CONWAY
County Clerk, Comanche County, Texas
By Jo Nell Davis Deputy

INDEXED AND RECORDED
FILED FOR RECORD
AT 10:15 O'CLOCK A M
SEP 1 1993
Betty Conway
Clerk County Court, Comanche Co., Texas

Margaret Allen
31825 Rice Rd.
Bulverde, Tx 78163-1769

# Exhibit 2

**DECLARATION OF MARGARET L. ALLEN**

I, Margaret L. Allen, under the provisions of 28 U.S.C. § 1746, hereby declare, under penalty of perjury, that the following statements are true and correct, to the best of my knowledge and belief. I have personal knowledge of the facts set forth in this declaration.

1. My former husband and I leased our property at W/S FM 589, Sidney, Texas to the U.S. Postal Service beginning in December 1968. The property was used by the Postal Service as the Sidney Post Office. Through a continuous series of renewal options and new lease agreements, I was in a contractual relationship with the Postal Service from 1968 until May 1999.

2. We, as the owners, were responsible for all maintenance and tax costs associated with the leased property at the time the lease began in 1968.

3. In January 1982, I divorced my former husband. I retained sole ownership of the property leased to the Postal Service.

4. In March 1982, I amended the lease with the Postal Service. The Postal Service requested that we negotiate an amendment that would assign maintenance responsibilities to the Postal Service. We ultimately negotiated a lease amendment that transferred maintenance responsibilities to the Postal Service in exchange for lower rent.

5. In 1993, in the course of negotiating a new lease, the Postal Service communicated its desire to add a Maintenance Rider to our usual lease agreement. The Maintenance Rider would transfer the responsibility of maintenance costs back to me, the owner. As consideration for this alteration to the lease, the Postal Service offered to

increase the yearly rent payment from $1,352 to $3,600. I agreed to their proposal, and we entered a new lease that included this change in responsibilities and rent.

6. I entered a new lease for the property with the Postal Service in 1998. The Postal Service and I did not discuss the possibility of altering the lease from its previous lease, entered in 1993. The Postal Service sent me its proposal, which included two renewal options with graduated rent increases. Other than an increase in rent from $3,600 to $3,960, and the addition of renewal options, there were no changes to the lease terms or responsibilities. There was a Maintenance Rider (M-1) attached to the lease, but there was no Reimbursement Tax Rider (T-1) attached to the lease. I did not notice that Section 7, "Other Provisions," of the lease listed the Reimbursement Tax Rider. If I had noticed, I would have requested that the Postal Service and I cross out the portion of Section 7 that read Reimbursement Tax Rider because no such rider was attached to the lease and Postal Service reimbursement of property taxes was not part of the lease I negotiated.

7. I have never seen a Reimbursement Tax Rider.

8. I did not agree or intend to transfer property tax payment responsibility from myself to the Postal Service when I signed my last lease with the Postal Service in December 1998. From the very beginning of my contractual relationship with the Postal Service, I always understood it be my responsibility—as the owner—to pay property taxes. I never intended or planned to ask the Postal Service for reimbursement of property taxes because that was never part of our lease. In fact, I considered how much I had to pay in property taxes each year when deciding how much rent to charge the Postal Service to lease the property.

9. I sold the property to Kerin Motors, Inc., in 1999. I did not communicate to Kerin Motors, Inc., that the Postal Service would reimburse Kerin Motors, Inc., for property taxes. We did not discuss the issue at all, and no one at Kerin Motors asked me about the words "Reimbursement Tax Rider (T-1)" found in Section 7, "Other Provisions," of the lease. The lease that I transferred to Kerin Motors did not include a Reimbursement Tax Rider.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Margaret L. Allen
Margaret L. Allen
Date: 11/05/07

# Exhibit 3

UNITED STATES POSTAL SERVICE.

ORIGINAL 229 **Lease**

Facility Name/Location
SIDNEY - MAIN OFFICE (488335-001)
W/S FM 589 SIDNEY, TX 76474-9998

COMANCHE COUNTY
Project: G69963

This LEASE, made and entered into by and between MARGARET ALLEN hereinafter called the Lessor, and the United States Postal Service, hereinafter called the Postal Service:

In consideration of the mutual promises set forth and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties covenant and agree as follows:

1. The Lessor hereby leases to the Postal Service and the Postal Service leases from the Lessor the following premises, hereinafter legally described in paragraph 9, in accordance with the terms and conditions described herein and contained in the 'General Conditions to U.S. Postal Service Lease,' Section A, attached hereto and made a part hereof.

Upon which is a one-story masonry building and which property contains areas, spaces, improvements, and appurtenances as follows:

| AREA | SQ. FEET | AREA | SQ. FEET |
|---|---|---|---|
| Net Floor Space | 768 | Joint Use/Common Areas: | |
| Platform | 80 | | |
| Parking and Maneuvering | 2,624 | | |
| **Other:** | | | |
| Driveway | | | |
| Landscaping | | | |
| Sidewalks | | | |
| **Total Site Area:** | 4,691 | | |

2. RENTAL: The Postal Service will pay the Lessor an annual rental of: $3,960.00

***Three Thousand Nine Hundred Sixty and 00/100 Dollars***

payable in equal installments at the end of each calendar month. Rent for a part of a month will be prorated. Rent checks shall be disbursed as follows:

payable to:
MARGARET ALLEN
P O BOX 176
BULVERDE TX 78163-0176

unless the Contracting Officer is notified, in writing by Lessor, of any change in payee or address at least sixty (60) days before the effective date of the change.

3. TO HAVE AND TO HOLD the said premises with their appurtenances:

FIXED TERM: The term beginning July 01, 2000 and ending June 30, 2005 for a total of 5 years.

UNITED STATES POSTAL SERVICE. ORIGINAL **Lease**

4. RENEWAL OPTIONS: The Lease may be renewed at the option of the Postal Service, for the following separate and consecutive terms and at the following annual rentals:

| RENEWAL OPTION | TERM NO. OF YEARS | PER ANNUM RENTAL |
|---|---|---|
| 1 | 5 | $4,356.00 2010 |
| 2 | 5 | $4,800.00 2015 |

provided that notice is sent, in writing, to the Lessor at least 30 days before the end of the original lease term and each renewal term. All other terms and conditions of this Lease will remain the same during any renewal term unless stated otherwise herein.

5. TERMINATION: The Postal Service may terminate this Lease at any time by giving 30 days written notice to the Lessor.

6. UTILITIES, SERVICES, AND EQUIPMENT: Lessor, as part of the rental consideration, shall furnish the following utilities, services and equipment: (See Lessor Obligations of General Conditions (A.24) and/or attached addendum for definitions.)
Heating System, Air Conditioning Equipment, Light Fixtures, Sewerage System, Electrical System, Water System.

7. OTHER PROVISIONS: The following additional provisions, modifications, riders, layouts and/or forms were agreed upon prior to execution and made a part hereof:
Maintenance Rider - Lessor (M-1), Reimbursement Tax Rider (T-1), the Postal Service will pay separately metered recurring utility charges.

8. The undersigned has completed the 'Representations and Certifications.' (See Section B).

9. LEGAL DESCRIPTION:

A tract of land north of the intersection of Farm Roads 589 and 1689 in Sidney, Comanche County, Texas, identified as Abstract 510, Htbrrco, south 50 feet of 4.0325, upon which is situated the Sidney, Texas Post Office.

UNITED STATES POSTAL SERVICE

ORIGINAL

Lease

EXECUTED BY LESSOR this 4th day of December, 1998.

**ALL INDIVIDUAL OFFERORS MUST SIGN**

Margaret Allen
Print Name & Title

Margaret Allen
Signature

Print Name & Title
Signature

Print Name & Title
Signature

Print Name & Title
Signature

Print Name & Title
Signature

Print Name & Title
Signature

Print Name & Title
Signature

Print Name & Title
Signature

Lessor, Address: MARGARET ALLEN
P O BOX 176 BULVERDE TX 78163-0176

Telephone No: (210)980-2613

Taxpayer ID: [redacted]

Witness

Witness

**ACCEPTANCE BY THE POSTAL SERVICE**

Date: 12/23/98

THOMAS W JACOBS
Contracting Officer

Signature of Contracting Officer

PO BOX 667180
DALLAS TX 75266-7180
Address of Contracting Officer

App.

PS Form 8300

UNITED STATES POSTAL SERVICE

ORIGINAL

# Form of Acknowledgment for Individuals

STATE OF TEXAS

COUNTY OF COMAL

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

MARGARET ALLEN
(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

(Identify individual party to the lease)

who is known to me to be the same person(s) who executed the foregoing lease, and who acknowledged that said person(s) signed, sealed and delivered the same as said person(s)'s free and voluntary act for the uses and purposes therein set forth.

Witness my hand and notarial seal, in the County and State aforesaid, this 4TH day of DECEMBER, 1998.

NOTARIAL SEAL

NOTARY PUBLIC STATE OF TEXAS
WALTER R HULL
NOTARY PUBLIC
State of Texas
Comm. Exp. 07-01-2002

Walter R. Hull
Notary Public

My commission expires 7-1-2002

UNITED STATES POSTAL SERVICE

Form C. Acknowledgment for Contracting Officer

ORIGINAL

STATE OF TEXAS SS:

COUNTY OF DALLAS

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

THOMAS W JACOBS

(Identify individual party to the lease)

known to be the CONTRACTING OFFICER

and to be the same person who executed the foregoing Lease, who deposes and says that he signed his name thereto by authority of said Postal Service, for the purposes set forth, and as his own free and voluntary act.

Witness my hand and notarial seal, in the County and State aforesaid,

this 23rd day of December, 1998

NOTARIAL SEAL

KATHLEEN A. ALONZO
MY COMMISSION EXPIRES
November 10, 2002

Kathleen A Alonzo

Notary Public - Kathleen A. Alonzo
State of Texas

My commission expires November 10, 2002



REACKCO (Nov. 1994)

UNITED STATES POSTAL SERVICE.

ORIGINAL

# Maintenance Rider
# Lessor Responsibility

a. The Lessor shall, except as otherwise specified herein and except for damage resulting from the negligence of Postal Service agents or employees, maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, whether severable or non-severable, furnished by the Lessor under this Lease, in good repair and tenantable condition. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times, and upon reasonable notice to the facility manager, enter and inspect the same and make any necessary repairs thereto. Additionally, the Lessor shall designate maintenance repairmen for electrical emergencies, plumbing emergencies and for heating, ventilating and air conditioning and other emergencies (windows, doors, locks and other elements), who may be called by the Postal Service in the event of any emergency situation involving maintenance when the Lessor or the Lessor's agent cannot be contacted within a reasonable time.

b. Lessor is responsible for inspection, prevention and eradication of termites and any other wood eating insects and for repairs of any damage resulting therefrom.

c. Lessor shall repaint the interior (including but not limited to the walls and ceilings) and exterior at least once every five (5) years (unless the five (5) year period is specifically extended in writing by the Contracting Officer) and at any other time that painting may become necessary as a result of fire or other casualty.

d. If a heating system is furnished by Lessor under this Lease, such system must be maintained by Lessor at all times so as to be capable of providing a uniform temperature of at least 65 degrees Fahrenheit in all enclosed portions of the demised premises.

e. If air-conditioning equipment is furnished by Lessor under this Lease, such equipment must be maintained by Lessor at all times so as to be capable of maintaining a uniform temperature of no greater than 78 degrees Fahrenheit in all enclosed portions of the premises.

f. Any heating boilers, hot water supply boilers, unfired pressure vessels, elevators, escalators and dumbwaiters provided by Lessor as part of the leased premises or operated by the Lessor in conjunction with the leased premises, shall be operated and maintained by the Lessor in accordance with ANSI/ASME A17.1, Safety Code for Elevators, Escalators, Dumbwaiters, and Moving Walks; ANSI/ASME A17.2, Elevator Inspectors Manual; ANSI/ASME A17.3, Safety Code for Existing Elevators and Escalators; ASME Boiler and Pressure Vessel Code; National Electric Code; and/or ASME Safety Code No. CSD-1, Controls and Safety Devices for Automatically Fired Boilers, as applicable, or as required by local ordinances. Current safety certificates issued by an organization recognized by the National Board of Boiler and Pressure Vessel Inspectors or a federal, state or municipal authority which has adopted the American National Standard Institute/American Society of Mechanical Engineers (ANSI/ASME) Boiler and Vessel Code, must be provided by the Lessor for boilers and unfired pressure vessels. Current safety certificates for elevators, dumbwaiters and escalators must be issued by an organization authorized to inspect in accordance with the ANSI/ASME Safety Code for Elevators, Dumbwaiters and Escalators or appropriate federal, state or municipal authority. In the event local jurisdictions do not require periodic inspection of such equipment, the Postal Service shall have the right to conduct inspections in accordance with the aforesaid codes, and may issue safety certificates as appropriate.

g. Whenever there is a need for maintenance or a repair which is the Lessor's obligation under this Maintenance Rider or for restoration of the premises or any part thereof to a state of good repair and tenantable condition, the Postal Service shall give the Lessor written notice thereof, specifying a time for completion of the work which is reasonable and commensurate with the nature of the work required. A copy of any such notice shall be sent by certified or registered mail to the Lessor's mortgagee and any assignee of monies due or to become due under this Lease whose names and addresses have been furnished to the Postal Service by the Lessor. If the Lessor (or the mortgagee or the assignee, on behalf of the Lessor) fails to prosecute the work with such diligence as will ensure its completion within the time specified in the written notice (or any extension thereof as may be granted at the sole discretion of the Postal Service) or fails to complete the work within said time, the Postal Service shall have the right to perform the work by contract or otherwise and withhold the cost thereof (which may include administrative cost and/or interest) from payments due or to become due under this Lease. In addition, the Postal Service may proportionally abate the rent for any period the premises, or any part thereof, are determined by the Postal Service to have been rendered untenantable to it by reason of such condition. Alternatively, the Postal Service may, if the demised premises are determined to be unfit for occupancy, at its sole discretion, cancel this Lease, without liability.

UNITED STATES POSTAL SERVICE.

ORIGINAL

# General Conditions to USPS Lease

## SECTION A

### A.1 CHOICE OF LAW

This Lease shall be governed by federal law.

### A.2 DEFINITIONS

As used in this contract, the following terms have the following meanings:

a. "Contracting officer" means the person executing this contract on behalf of the Postal Service, and any other employee who is a properly authorized contracting officer; the term includes, except as otherwise provided in the contract, the authorized representative of a contracting officer acting within the limits of the authority conferred upon that person.

b. "Successful offeror," "offeror," "contractor," or "Lessor" are interchangeable and refer to the party whose proposal is accepted by the Postal Service.

c. "Lease" and "agreement" are interchangeable and refer to this document, including all riders and attachments thereto.

### A.3 EXECUTION REQUIREMENTS

a. All co-owners and all other persons having or to have a legal interest in the property must execute the Lease. If the offeror is married, the husband or wife of the offeror must also execute the Lease. The offeror must submit adequate evidence of title.

b. If the offeror is a general partnership, each member must sign.

c. If the offeror is a limited partnership, all general partners must sign.

d. Where the offeror is an administrator or an executor of an estate, there must be furnished a certificate of the clerk of the court or certified copy of the court order showing the appointment of the administrator or executor, together with a certified copy of the will of the deceased. If there is no will, or in the event the will of the deceased does not specifically authorize the administrator or the executor to enter into a contract to lease the proposed quarters, it will generally be necessary to furnish, in addition to the above named items, a certified copy of the court order authorizing such administrator or executor to enter into a lease with the Postal Service.

e. Where the offeror is a trustee, a certified copy of the instrument creating the trust must be furnished together with any other evidence necessary to establish the trustee's authority to lease.

f. Where the offeror is a corporation, leases and lease agreements entered into must have the corporate seal affixed or in place thereof the statement that the corporation has no seal.

g. Where the offeror is a corporation, municipal corporation, fraternal order or society, the Lease must be accompanied by documentary evidence affirming the authority of the agent, or agents, to execute the Lease to bind the municipal corporation, fraternal order or society for which he (or they) purports to act. The usual evidence required to establish such authority is in the form of extracts from the articles of incorporation, or bylaws, or the minutes of the board of directors duly certified by the custodian of such records, under the corporate seal. Such resolutions, when required, must contain the essential stipulations embodied in the Lease. The names and official titles of the officers who are authorized to sign the Lease must appear in the document.

h. Notices. Any notice to Lessor provided under this Lease or under any law or regulation must be in writing and may be hand delivered or mailed to Lessor at the address specified on page 3 of the Lease, or at an address that Lessor has otherwise appropriately directed in writing. Any notice to the Postal Service provided under this Lease or under any law or regulation must be in writing and may be hand delivered or mailed, addressed to "Contracting Officer, U.S. Postal Service" at the address specified on page 3 of the Lease, or at an address that the Postal Service has otherwise directed in writing.

### A.4 MORTGAGEE'S AGREEMENT

If there is now or will be a mortgage on the property which is or will be recorded prior to the recording of the Lease, the offeror must notify the contracting officer of the facts concerning such mortgage and, unless in his sole discretion the contracting officer waives the requirement, the offeror must furnish a Mortgagee's Agreement, which will consent to this Lease and shall provide that, in the event of foreclosure, mortgagee, successors, and assigns shall cause such foreclosures to be subject to the Lease.

### A.5 EQUAL OPPORTUNITY

a. The contractor may not discriminate against employees or applicants because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, religion, sex, or national origin. This action must include, but not be limited to, employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants, notices provided by the contracting officer setting forth the provisions of this clause.

b. The contractor must, in all solicitations or advertisements for employees placed by it or on its behalf, state that all qualified applicants will be considered for employment without regard to race, color, religion, sex, or national origin.

c. The contractor must send to each union or workers' representative with which the contractor has a collective bargaining agreement or other understanding, a notice, provided by the contracting officer, advising the union or workers' representative of the contractor's commitments under this clause, and must post copies of the notice in conspicuous places available to employees and applicants.

d. The contractor must comply with all provisions of Executive Order (EO) 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e. The contractor must furnish all information and reports required by the Executive order, and by the rules, regulations, and orders of the Secretary, and must permit access to the contractor's books, records, and accounts by the Postal Service and the Secretary for purposes of investigation to ascertain compliance with these rules, regulations, and orders.

f. If the contractor fails to comply with this clause or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part; the contractor may be declared ineligible for further contracts in accordance with the Executive order; and other sanctions may be imposed and remedies invoked under the Executive order, or by rule, regulation, or order of the Secretary, or as otherwise provided by law.

g. The contractor must insert this clause, including this paragraph g, in all subcontracts or purchase orders under this contract unless exempted by Secretary of Labor rules, regulations, or orders issued under the Executive order. The contractor must take such action with respect to any such subcontract or purchase order as the Postal Service may direct

as a means of enforcing the terms and conditions of this clause (including sanctions for noncompliance), provided, however, that if the contractor becomes involved in, or is threatened with, litigation as a result, the contractor may request the Postal Service to enter into the litigation to protect the interests of the Postal Service.

h. Disputes under this clause will be governed by the procedures in 41 CFR 60-1.1.

**A.6 FACILITIES NONDISCRIMINATION**

a. As used in this clause, the term "facility" means stores, shops, restaurants, cafeterias, restrooms, and any other facility of a public nature in the building in which the space covered by this Lease is located.

b. The Lessor agrees that he will not discriminate by segregation or otherwise against any person or persons because of race, religion, color, age, sex, or national origin in furnishing, or by refusing to furnish, to such person or persons the use of any facility including any and all services, privileges, accommodations, and activities provided thereby.

c. It is agreed that the Lessor's noncompliance with the provisions of this clause shall constitute a material breach of this Lease. In the event of such noncompliance, the Postal Service may take appropriate action to enforce compliance, may terminate this lease, or may pursue such other remedies as may be provided by law. In the event of termination, the Lessor shall be liable for all excess costs of the Postal Service in acquiring substitute space, including but not limited to the cost of moving to such space.

d. The Lessor agrees to include, or to require the inclusion of the foregoing provisions of this clause (with the terms "Lessor" and "Lease" appropriately modified) in every agreement or concession pursuant to which any person other than the Lessor operates or has the right to operate any facility. The Lessor also agrees that it will take such action with respect to any such agreement as the Postal Service may direct as a means of enforcing this clause, including but not limited to termination of the agreement or concession.

**A.7 OFFICIALS NOT TO BENEFIT**

No member of or delegate to Congress may be admitted to any part or share of this contract, or to any benefit arising from it. This prohibition does not apply to the extent this contract is with a corporation for the corporation's general benefit.

**A.8 CONTINGENT FEES**

a. The offeror warrants that no person or selling agency has been employed or retained to solicit or obtain this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide, established commercial or selling agencies maintained by the Lessor for the purpose of obtaining business.

b. For breach or violation of this warranty, the Postal Service has the right to annul this contract without liability, or at its sole discretion, to deduct from the contract price or consideration, or otherwise recover from offeror the full amount of the commission, percentage, brokerage fee, or contingent fee.

c. Licensed real estate agents or brokers having listings on property for rent, in accordance with general business practice, and who have not obtained such licenses for the sole purpose of effecting this lease, may be considered as bona fide employees or agencies within the exception contained in this clause.

**A.9 ASSIGNMENT OF CLAIMS**

a. If this contract provides for payments aggregating $10,000 or more, claims for moneys due or to become due from the Postal Service under it may be assigned to a bank, trust company, or other financing institution, including any federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any assignment or reassignment must cover all amounts payable and must not be made to more than one party, except that assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in financing this contract. No assignment or reassignment will be recognized as valid and binding upon the Postal Service unless a written notice of the assignment or reassignment, together with a true copy of the instrument of assignment, is filed with

1.The contracting officer; and

2.The surety or sureties upon any bonds.

b. Except with the written consent of the Contracting Officer, assignment of this contract or any interest in this contract other than in accordance with the provisions of this clause will be grounds for termination of the contract for default at the option of the Postal Service.

c. Nothing contained herein shall be construed so as to prohibit transfer of ownership of the demised premises, so long as such transfer is subject to this agreement.

**A.10 COMPLIANCE WITH OSHA STANDARDS**

The Lessor must (i) comply with applicable Occupational Safety and Health Standards, title 29 Code of Federal Regulations, Part 1910, promulgated pursuant to the authority of the Occupational Safety and Health Act of 1970; (ii) comply with any other applicable federal, state, or local regulation governing workplace safety to the extent they are not in conflict with (i); and (iii) take all other proper precautions to protect the health and safety of (a) any laborer or mechanic employed by the Lessor in performance of this agreement, (b) Postal Service employees, and (c) the public. The Lessor must include this clause in all subcontracts hereunder and to require its inclusion in all subcontracts of a lower tier. The term "Lessor" as used in this clause in any subcontract must be deemed to refer to the subcontractor.

**A.11 EXAMINATION OF RECORDS**

a. The Postal Service and its authorized representatives will, until three years after final payment under this contract, or for any shorter period specified for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the contractor involving transactions related to this contract.

b. The contractor agrees to include in all subcontracts under this contract a provision to the effect that the Postal Service and its authorized representatives will, until three years after final payment under the subcontract, or for any shorter specified period for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the subcontractor involving transactions related to the subcontract. The term "subcontract" as used in this clause excludes:

1. Purchase orders; and

2. Subcontracts for public utility services at rates established for uniform applicability to the general public.

**A.12 CLEAN AIR AND WATER**

The contractor agrees:

UNITED STATES POSTAL SERVICE. ORIGINAL **General Conditions to USPS Lease**

a. To comply with all the requirements of section 114 of the Clean Air Act (42 U.S.C. 7414) and section 308 of the Clean Water Act (33 U.S.C. 1318) relating to inspection, monitoring, entry, reports, and information, as well as other requirements specified in section 114 of the Clean Air Act and section 308 of the Clean Water Act, and all regulations and guidelines issued to implement those acts before the award of this contract;

b. That no portion of the work required by this contract will be performed in a facility listed on the Environmental Protection Agency List of Violating Facilities on the date when this contract was awarded unless and until the EPA eliminates the name of the facility from the listing;

c. To use its best efforts to comply with clean air standards and clean water standards at the facility in which the contract is being performed; and

d. To insert the substance of this clause into any nonexempt subcontract, including this paragraph d.

### A.13 CLAIMS AND DISPUTES

a. This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) ("the Act").

b. Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

c. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph d.2 below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

d.

1. A claim by the contractor must be made in writing and submitted to the contracting officer for a written decision. A claim by the Postal Service against the contractor is subject to a written decision by the contracting officer.

2. For contractor claims exceeding $50,000, the contractor must submit with the claim a certification that:

(a) The claim is made in good faith;

(b) Supporting data are accurate and complete to the best of the contractor's knowledge and belief; and

(c) The amount requested accurately reflects the contract adjustment for which the contractor believes the Postal Service is liable.

3.

(a) If the contractor is an individual, the certification must be executed by that individual.

(b) If the contractor is not an individual, the certification must be executed by:

(1) A senior company official in charge at the contractor's plant or location involved; or

(2) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

e. For contractor claims of $50,000 or less, the contracting officer must, if requested in writing by the contractor. render a decision within 60 days of the request. For contractor-certified claims over $50,000, the contracting officer must, within 60 days, decide the claim or notify the contractor of the date by which the decision will be made.

f. The contracting officer's decision is final unless the contractor appeals or files a suit as provided in the Act.

g. The Postal Service will pay interest on the amount found due and unpaid from:

1. The date the contracting officer receives the claim (properly certified if required); or

2. The date payment otherwise would be due, if that date is later, until the date of payment.

h. Simple interest on claims will be paid at a rate determined in accordance with the Interest clause.

i. The contractor must proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the contracting officer.

### A.14 AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS

The following clause is applicable if this contract provides for payments aggregating $2,500 or more.

a. The contractor may not discriminate against any employee or applicant because of physical or mental handicap, in regard to any position for which the employee or applicant is qualified. The contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified handicapped individuals without discrimination in all employment practices, such as employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training (including apprenticeship).

b. The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973, as amended.

c. In the event of the contractor's noncompliance with this clause, action may be taken in accordance with the rules and regulations and relevant orders of the Secretary of Labor.

d. The contractor agrees to post in conspicuous places, available to employees and applicants, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer. These notices state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants, and the rights of applicants and employees.

e. The contractor must notify each union or worker's representative with which it has a collective bargaining agreement or other understanding that the contractor is bound by the terms of section 503 of the Act and is committed to taking affirmative action to employ, and advance in employment, handicapped individuals.

f. The contractor must include this clause in every subcontract or purchase order over $2,500 under this contract unless exempted by

UNITED STATES POSTAL SERVICE.

ORIGINAL



rules, regulations, or orders of the Secretary issued pursuant to section 503 of the Act, so its provisions will be binding upon each subcontractor or vendor. The contractor must take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce in these provisions, including action for noncompliance.

**A.15 AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA**

If this contract provides for payments aggregating $10,000 or more, the following clause is applicable.

a. The contractor may not discriminate against any employee or applicant because that employee or applicant is a disabled veteran or veteran of the Vietnam era, in regard to any position for which the employee or applicant is qualified. The contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified disabled veterans and veterans of the Vietnam era without discrimination in all employment practices, such as employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training (including apprenticeship).

b. The contractor agrees that all suitable employment openings of the contractor existing at the time of the execution of this contract or occurring during its performance (including those not generated by this contract and those occurring at an establishment of the contractor other than the one where the contract is being performed, but excluding those of independently operated corporate affiliates) will be listed at an appropriate local office of the State employment service system where the opening occurs. The contractor further agrees to provide such reports to the local office regarding employment openings and hires as may be required. State and local government agencies holding Postal Service contracts of $10,000 or more will also list all their suitable openings with the appropriate office of the State employment service.

c. Listing of employment openings with the employment service system will be made at least concurrently with the use of any other recruitment source or effort and will involve the normal obligations attaching to the placing of a bona fide job order, including the acceptance of referrals of veterans and non-veterans. The listing of employment openings does not require the hiring of any particular applicant or hiring from any particular group of applicants, and nothing herein is intended to relieve the contractor from any other requirements regarding nondiscrimination in employment.

d. Whenever the contractor becomes contractually bound to the listing provisions of this clause, it must advise the employment service system in each State where it has establishments of the name and location of each hiring location in the State. The contractor may advise the State system when it is no longer bound by this clause.

e. Paragraphs b, c, and d above do not apply to openings the contractor proposes to fill from within its own organization or under a customary and traditional employer/union hiring arrangement. But this exclusion does not apply to a particular opening once the contractor decides to consider applicants outside its own organization or employer/union arrangements for that opening.

f. Definitions

1. "All suitable employment openings" includes openings that occur in the following job categories: production and non-production; plant and office; laborers and mechanics; supervisory and non-supervisory; technical; and executive, administrative, and professional openings as are compensated on a salary basis of less than $25,000 per year. This term includes full-time employment, temporary employment of more than three days' duration, and part-time employment. It does not include openings the contractor proposes to fill from within its own organization or under a customary and traditional employer/union hiring arrangement or openings in an educational institution that are restricted to students of that institution. Under the most compelling circumstances, an employment opening may not be suitable for listing, including situations in which the needs of the Postal Service cannot reasonably be otherwise supplied, when listing would be contrary to national security, or when the requirement of listing would otherwise not be in the best interests of the Postal Service.

2. "Appropriate office of the State employment service" means the local office of the Federal/State national systems of public employment offices with assigned responsibility for serving the area where the employment opening is to be filled.

3. "Openings the contractor proposes to fill from within its own organization" means employment openings for which persons outside the contractor's organization (including any affiliates, subsidiaries, and the parent companies) will not be considered and includes any openings the contractor proposes to fill from regularly established "recall" lists.

4. "Openings the contractor proposes to fill under a customary and traditional employer/union hiring arrangement" means employment openings the contractor proposes to fill from union halls as part of the customary and traditional hiring relationship existing between it and representatives of its employees.

g. The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Vietnam Era Veterans Readjustment Assistance Act of 1972, as amended.

h. In the event of the contractor's noncompliance with this clause, action may be taken in accordance with the rules, regulations, and relevant orders of the Secretary.

i. The contractor agrees to post in conspicuous places, available to employees and applicants, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer. These notices state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era, and the rights of applicants and employees.

j. The contractor must notify each union or workers' representative with which it has a collective bargaining agreement or other understanding that the contractor is bound by the terms of the Act and is committed to taking affirmative action to employ, and advance in employment, qualified disabled veterans and veterans of the Vietnam era.

k. The contractor must include this clause in every subcontract or purchase order of $10,000 or more under this contract unless exempted by rules, regulations, or orders of the Secretary issued pursuant to the Act, so its provisions will be binding upon each subcontractor or vendor. The contractor must take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce in these provisions, including action for noncompliance.

**A.16 GRATUITIES**

a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines that the contractor or the contractor's agent or other representative:

UNITED STATES POSTAL SERVICE.

ORIGINAL

# General Conditions to USPS Lease

1. Offered or gave a gratuity (such as a gift or entertainment) to an officer or employee of the Postal Service; and

2. Intended by the gratuity to obtain a contract or favorable treatment under a contract.

b. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

### A.17 HAZARDOUS/TOXIC CONDITIONS CLAUSE

"Asbestos containing building material" (ACBM) means any material containing more than 1% asbestos as determined by using the method specified in 40 CFR Part 763, Subpart E, Appendix E. "Friable asbestos material" means any ACBM that when dry, can be crumbled, pulverized, or reduced to powder by hand pressure. Sites cannot have contaminated soil, water or undisclosed underground storage tanks.

The Lessor agrees to identify and disclose the presence, location and quantity of all ACBM or presumed asbestos containing material (PACM) which includes all thermal system insulation, sprayed on and troweled on surfacing materials, and asphalt and vinyl flooring material unless such material has been tested to not be ACBM. Unless due to the act or negligence of the Postal Service, if contaminated soil, water, underground storage tanks or piping or friable asbestos or any other hazardous/toxic materials or substances as defined by applicable Local, State or Federal law is subsequently identified on the premises, the Lessor agrees to remove such materials or substances upon notification by the U. S. Postal Service at Lessor's sole cost in accordance with EPA and/or State guidelines. If the Lessor fails to remove the asbestos or hazardous/toxic materials or substances, the Postal Service has the right to accomplish the work and deduct the cost plus administrative costs, from future rent payments or recover these costs from Lessor by other means, or may, at its sole option, cancel this Lease. In addition, the Postal Service may proportionally abate the rent for any period the premises, or any part thereof, are determined by the Postal Service to have been rendered unavailable to it by reason of such condition.

The remainder of this clause applies if this Lease is for premises not previously occupied by the Postal Service.

By execution of this Lease the Lessor certifies:

1. The property and improvements are free of all contamination from petroleum products or any hazardous/toxic or unhealthy materials or substances including friable asbestos, as defined by applicable State or Federal law.

2. There are no undisclosed underground storage tanks and associated piping or ACBM on the property.

The Lessor hereby indemnifies the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, expense and/or liability resulting from, brought for, or on account of any violation of this clause.

### A.18 ADVERTISING OF CONTRACT AWARDS

Except with the contracting officer's prior approval, the contractor agrees not to refer in its commercial advertising to the fact that it was awarded a Postal Service contract or to imply in any manner that the Postal Service endorses its products.

### A.19 RECORDING

Recording Not Required

### A.20 SUBLEASE

The Postal Service may sublet all or any part of the premises or assign this lease but shall not be relieved from any obligation under this lease by reason of any subletting or assignment.

### A.21 ALTERATIONS

The Postal Service shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased (provided such alterations, additions, structures, or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Postal Service and may be removed or otherwise disposed of by the Postal Service. Prior to expiration or termination of this lease the Postal Service may remove such alterations and improvements and restore the premises to as good condition as that existing at the time of entering upon the same under the lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Postal Service has no control, excepted. If however, at the expiration or termination of the lease or any renewal or extension thereof, the Postal Service elects not to remove such alterations and/or improvements, said alterations and/or improvements shall become the property of the Lessor and any rights of restoration are waived.

### A.22 APPLICABLE CODES AND ORDINANCES

The Lessor, as part of the rental consideration, agrees to comply with all codes and ordinances applicable to the ownership and operation of the building in which the rented space is situated and to obtain all necessary permits and related items at no cost to the Postal Service.

### A.23 DAMAGE OR DESTRUCTION OF PREMISES

If the demised premises or any portion thereof are damaged or destroyed by fire or other casualty, Acts of God, of a public enemy, riot or insurrection or are otherwise determined by the Postal Service to be unfit for use and occupancy, the Postal Service may:

a. terminate this lease as of the date the premises become unfit for use and occupancy, or

b. require the Lessor to repair or rebuild the premises as necessary to restore them to tenantable condition to the satisfaction of the Postal Service. For any period the premises, or any part thereof, are unfit for use and occupancy, the rent will be abated in proportion to the area determined by the Postal Service to be untenantable. Unfitness for use does not include unsuitability arising from such causes as design, size, or location of the premises, or

c. accomplish all repair necessary for postal occupancy and deduct all such costs, plus administrative burden from future rents.

### A.24 LESSOR OBLIGATIONS

The Lessor's obligations regarding the services to be provided are further defined as follows:

a. If heating system and fuel are furnished - Lessor must furnish heating system together with all fuel required for proper operation of the system during the continuance of the Lease. The system must be in good working order and, if maintained by the Lessor, will be maintained in accordance with the Maintenance Rider attached hereto.

b. If heat is furnished - Lessor must maintain a uniform heating temperature of 65 degrees F. in all enclosed portions of the demised premises during the continuance of the Lease.

App. 45

UNITED STATES POSTAL SERVICE.

ORIGINAL

# General Conditions to USPS Lease

c. If heating system is furnished - Lessor must furnish heating system in good working order and, if maintained by Lessor, will be maintained in accordance with the Maintenance Rider attached hereto.

d. If lighting fixtures and power are furnished - Lessor must provide light fixtures in good working order as well as pay all recurring electric bills.

e. If light fixtures are furnished - Lessor must provide light fixtures in good working order.

f. If electricity is furnished - Lessor must pay for all recurring electric bills and furnish the electrical system during the continuance of the Lease.

g. If electrical system is furnished - Lessor must furnish an electrical system in good working order having a separate electrical meter.

h. If water system and water are furnished - Lessor must furnish a water system in good working order and pay for all recurring water bills during the continuance of the Lease.

i. If water system is furnished - Lessor must furnish a water system in good working order with separate water meter.

j. If sewerage service is furnished - Lessor agrees to furnish sewerage systems including all equipment, piping, plumbing, lines, connections, septic tanks, field lines and related devices, as necessary and to pay all charges, fees and other costs for such system and services during the continuance of the Lease.

k. If sewerage system is furnished - Lessor agrees to furnish sewerage systems including all equipment, piping, plumbing, lines, connections, septic tanks, field lines, and related devices, as necessary during the continuance of the Lease.

l. Future Availability of Public Water and/or Sewerage Services - Regardless of Lessor's responsibility for water and/or sewerage under this Lease, if public water and/or sewerage services are not currently available, but become available in the future, the Lessor agrees to accomplish connection, maintain, and pay all fees and costs involved in connecting the building system to the public water and/or sewerage systems. After connection, the Postal Service agrees to pay recurring charges for water consumption and use of sewerage services. If connection of such services is optional, the Postal Service will determine if the connection is to be made by the Lessor.

m. If air-conditioning equipment and operating power are provided - Lessor must furnish air-conditioning equipment together with all power required for proper operation of the equipment during the continuance of the Lease. The equipment must be in good working order and, if maintained by the Lessor, will be maintained in accordance with the Maintenance Rider attached hereto.

n. If air-conditioning equipment is furnished - Lessor must furnish air conditioning equipment in the demised premises in good working order and, if maintained by Lessor, will be maintained in accordance with the Maintenance Rider included attached hereto.

o. If air-conditioning is furnished - Lessor must maintain a uniform temperature of no greater than 78 degrees F. in all enclosed portions of the demised premises and be responsible for servicing of the air conditioning equipment including, but not limited to, the replacement of necessary filters and refrigerant as required for proper operation of the equipment together with power, water and other services for its operation.

## A.25 LESSOR'S SUCCESSORS

The terms and provisions of this Lease and the conditions herein are binding on the Lessor, and all heirs, executors, administrators, successors, and assigns.

## A.26 DRUG-FREE WORKPLACE

a. Applicability. This clause applies to all contracts with individuals without regard to the dollar amount, and to all other contracts over $50,000.

b. Exceptions. This clause does not apply to those contracts that are to be performed completely outside of the United States, its territories, and possessions.

c. Definitions. As used in this clause:

1. "Controlled substance" means those substances identified in schedules I through V, Section 202 of the Controlled Substances Act (21 U.S.C. 812), and as further defined in 21 CFR Sections 1308.11 through 1308.15.

2. "Conviction" means a finding of guilt (including a finding based on a plea of guilty or a plea of nolo contender) by any judicial body charged with the responsibility to determine violations of criminal drug statutes.

3. "Criminal drug statute" means a federal or non-federal criminal statute involving drug abuse.

4. "Drug abuse" means the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance.

5. "Employee" means any person directly engaged in the performance of work under a Postal Service contract.

6. "Individual" means a contractor with no employees other than himself or herself.

7. "Workplace" means any site where work is being done in connection with this contract.

d. Requirements

1. Contractors, except as individuals, must provide a drug-free workplace by:

(a) Publishing, publicly posting, and furnishing each employee a statement that drug abuse in the workplace is prohibited and specifying what actions will be taken against employees for violations of the prohibition;

(b) Establishing a drug-free awareness program to inform all employees about:

(1) The dangers of drug abuse in the workplace;

(2) The contractor's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Notifying all employees that, as a condition of continued employment on this contract, the employee must:

UNITED STATES POSTAL SERVICE. ORIGINAL **General Conditions to USPS Lease**

(1) Abide by the contractor's prohibition of drug abuse in the workplace; and

(2) Notify the contractor of any criminal drug conviction for a violation occurring in the workplace within five (5) days of such conviction;

(d) Notifying the contracting officer within ten (l0) days of receiving a notice of a conviction from an employee or otherwise;

(e) Instituting appropriate personnel action, up to and including termination, against an employee or requiring the employee to complete a drug abuse assistance or rehabilitation program approved by a Federal, State, local health, law enforcement, or other appropriate agency within thirty (30) days of receiving a notice of conviction; and

(f) Making consistent and good faith efforts to maintain a drug-free workplace through implementation of paragraphs d.1.(a) through d.1.(e), above.

2. The contractor, if an individual, must not engage in drug abuse in the performance of this contract.

e. Sanctions. Violation of the terms of this clause may be grounds for the termination for default, and suspension or debarment from eligibility for future Postal Service contracts.

**A.27 DAVIS-BACON ACT**

The following is applicable if this agreement covers premises of net interior space in excess of 6,500 square feet and involves construction work over $2,000.00.

a. Minimum Wages

1. All mechanics and laborers employed in the contract work (other than maintenance work of a recurring, routine nature necessary to keep the building or space in condition to be continuously used at an established capacity and efficiency for its intended purpose) must be paid unconditionally, and not less than once a week, without deduction or rebate (except for deductions permitted by the Copeland Regulations (29 CFR Part 3)), the amounts due at the time of payment computed at rates not less than the aggregate of the basic hourly rates and rates of payments, contributions, or costs for any fringe benefits contained in the wage-determination decision of the Secretary of Labor, attached hereto, regardless of any contractual relationship alleged to exist between the Lessor, or subcontractor and these laborers and mechanics. A copy of the wage-determination decision must be kept posted by the Lessor at the site of the work in a prominent place where it can easily be seen by the workers.

2. The Lessor may discharge its obligation under this clause to workers in any classification for which the wage-determination decision contains:

(a) Only a basic hourly rate of pay, by making payment at not less than that rate, except as otherwise provided in the Copeland Regulations (29 CFR Part 3); or

(b) Both a basic hourly rate of pay and fringe-benefit payments, by paying in cash, by irrevocably contributing to a fund, plan, or program for, or by assuming an enforceable commitment to bear the cost of, bona fide fringe benefits contemplated by 40 U.S.C. 276a, or by a combination of these.

3. Contributions made, or costs assumed, on other than a weekly basis (but not less often than quarterly) are considered as having been constructively made for a weekly period. When a fringe benefit is expressed in a wage determination in any manner other than as an hourly rate and the Lessor pays a cash equivalent or provides an alternative fringe benefit, the Lessor must furnish information with the Lessor's payrolls showing how the Lessor determined that the cost incurred to make the cash payment or to provide the alternative fringe benefit is equal to the cost of the wage-determination fringe benefits. When the Lessor provides a fringe benefit different from that contained in the wage determination, the Lessor must show how the hourly rate was arrived at. In the event of disagreement as to an equivalent of any fringe benefit, the contracting officer must submit the question, together with the contracting officer's recommendation, to the Secretary of Labor for final determination.

4. If the contractor does not make payments to a trustee or other third person, the contractor may consider as payment of wages the costs reasonably anticipated in providing bona fide fringe benefits, but only with the approval of the Secretary of Labor pursuant to a written request by the Lessor. The Secretary of Labor may require the Lessor to set aside assets in a separate account, to meet the Lessor's obligations under any unfunded plan or program.

5. The contracting officer will require that any class of laborers or mechanics not listed in the wage-determination but to be employed under the contract will be classified in conformance with the wage-determination and report the action taken to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, D.C. 20210-0001, for approval. The contracting officer will approve an additional classification and wage rate and fringe benefits therefor only if:

(a) The work to be performed by the classification requested is not performed by a classification in the wage-determination;

(b) The classification is utilized in the area by the construction industry; and

(c) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

6. If the Lessor, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate and fringe benefits therefor, the contracting officer must submit the question, together with the views of the interested parties and the contracting officer's recommendation, to the Wage and Hour Administrator for final determination. The Administrator or authorized representative will, within 30 days of receipt, approve, modify, or disapprove every proposed additional classification action, or issue a final determination if the parties disagree, and so advise the contracting officer or advise that additional time is necessary. The final approved wage rate (and fringe benefits if appropriate) must be paid to all workers performing work in the classification under the contract from the first day work is performed in the classification. The Lessor will post a copy of the final determination of the conformance action with the wage-determination determination at the site of the work. (The Department of Labor information collection and reporting requirements contained in subparagraph a.5 above and in this subparagraph a.6 have been approved by the Office of Management and Budget under OMB control number 1215-0140.)

b. Apprentices and Trainees

1. Apprentices may be permitted to work only when (a) registered, individually, under a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, U.S. Department of Labor, or, if no

such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, or (b) if not individually registered in the program, certified by the Bureau of Apprenticeship and Training or State agency (as appropriate) to be eligible to work only if individually registered in a program approved by the Employment and Training Administration, U.S. Department of Labor.

2. The ratio of apprentices to journeymen or trainees to journeymen in any craft classification must not be greater than that permitted for the Lessor's entire work force under the registered apprenticeship or trainee program. Apprentices and trainees must be paid at least the applicable wage rates and fringe benefits specified in the approved apprenticeship or trainee program for the particular apprentice's or trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage-determination. If the apprenticeship or trainee program does not specify fringe benefits, apprentices or trainees must be paid in the full amount of fringe benefits listed on the wage-determination for the applicable classification unless the Administrator of Wage and Hour Division determines that a different practice prevails. Any employee listed on a payroll at an apprentice or trainee wage rate not registered, or performing work on the job site in excess of the ratio permitted under the registered program, must be paid the wage rate on the wage determination for the classification of work actually performed.

3. If the Bureau of Apprenticeship and Training or State agency recognized by the Bureau (as appropriate) withdraws approval of an apprenticeship program, or if the Employment and Training Administration withdraws approval of a trainee program, the contractor will no longer be permitted to utilize apprentices or trainees (as appropriate) at less than the applicable predetermined rate for the work performed until an acceptable program is approved. (See 29 CFR 5.16 for special provisions that apply to training plans approved or recognized by the Department of Labor prior to August 20, 1975.)

4. The utilization of apprentices, trainees, and journeymen must be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

c. Overtime Compensation

1. The Lessor may not require or permit any laborer or mechanic employed on any work under this contract to work more than 40 hours in any workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333), unless the laborer or mechanic receives compensation at a rate not less than one-and-one-half times the laborer's or mechanic's basic rate of pay for all such hours worked in excess of 40 hours.

2. For violations of subparagraph c.1 above, the Lessor is liable for liquidated damages, which will be computed for each laborer or mechanic at $10 for each day on which the employee was required or permitted to work in violation of subparagraph c.1 above.

3. The contracting officer may withhold from the Lessor sums as may administratively be determined necessary to satisfy any liabilities of the Lessor for unpaid wages and liquidated damages pursuant to subparagraph c.2 above.

d. Payroll and Other Records

1. For all laborers and mechanics employed in the work covered by this clause, the Lessor must maintain payrolls and related basic records and preserve them for a period of three years after contract completion. The records must contain the name, address, and social security number of each employee, the employee's correct classification, rate of pay (including rates of contributions for, or costs assumed to provide, fringe benefits), the daily and weekly number of hours worked, deductions made, and actual wages paid. Whenever the Lessor has obtained approval from the Secretary of Labor to assume a commitment to bear the cost of fringe benefits under subparagraph a.4 above, the Lessor must maintain records showing the commitment and its approval, communication of the plan or program to the employees affected, and the costs anticipated or incurred under the plan or program. Lessors employing apprentices or trainees under approved programs must maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

2. The Lessor must submit weekly, for each week in which any work covered by this clause is performed, a copy of all payrolls to the contracting officer. The Lessor is responsible for the submission of copies of payrolls of all subcontractors. The copy must be accompanied by a statement signed by the Lessor indicating that the payrolls are correct and complete, that the wage rates contained in them are not less than those determined by the Secretary of Labor, and that the classifications set forth for each laborer or mechanic conform with the work the laborer or mechanic performed. Submission of the Weekly Statement of Compliance (see 29 CFR 5.5(a)(3)(ii)) required under this agreement satisfies this requirement. As required by this clause, the Lessor must submit a copy of any approval by the Secretary of Labor. (The Department of Labor information collection and reporting requirements in this subparagraph d.2 have been approved by the Office of Management and Budget under OMB control numbers 1215-0140 and 1215-0017.)

3. The Lessor's records required under this clause must be available for inspection by authorized representatives of the contracting officer and the Department of Labor, and the Lessor must permit the representative to interview employees during working hours on the job.

4. The Lessor must comply with the Copeland Regulations of the Secretary of Labor (29 CFR Part 3), which are hereby incorporated in this contract by reference.

e. Withholding of Funds. The contracting officer may withhold from the Lessor under this or any other contract with the Lessor so much of the accrued payments or advances as is considered necessary to pay all laborers and mechanics the full amount of wages required by this contract or any other contract subject to the Davis-Bacon prevailing wage requirements that is held by the Lessor.

f. Subcontracts

1. If the Lessor or any subcontractor fails to pay any laborer or mechanic employed on the site of the work any of the wages required by the contract, the contracting officer may, after written notice to the Lessor, suspend further payments or advances to the Lessor until violations have ceased.

## A.28 BANKRUPTCY

In the event the Lessor enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the Lessor will furnish, by certified mail, written notification of the bankruptcy to the contracting officer responsible for administering the contract. The notification must be furnished within five days of the initiation of the bankruptcy proceedings. The notification must include the date on which the bankruptcy petition was filed, the court in which the petition was filed, and a list of Postal Service contracts and contracting officers for all Postal Service contracts for which final

UNITED STATES POSTAL SERVICE

ORIGINAL

**General Conditions to USPS Lease**

payment has not yet been made. This obligation remains in effect until final payment under this contract.

# Exhibit 4

**DECLARATION OF WILLIAM L. McMURRY**

I, William L. McMurry, under the provisions of 28 U.S.C. § 1746, hereby declare, under penalty of perjury, that the following statements are true and correct, to the best of my knowledge and belief. I have personal knowledge of the facts set forth in this declaration.

1. I have been employed by the U.S. Postal Service since November 1998, as a Real Estate Specialist in the Dallas, Texas Facilities Service Office. Prior to that, I was a contractor for the Postal Service for two plus years doing leasing and finding sites for new Post Offices. I have held the title of Real Estate Specialist since November 1998. My responsibilities include leasing facilities for the Postal Service, including Post Offices, in the Dallas District. Specifically, I prepare and put together lease paperwork using computer software; I negotiate terms with prospective lessors; I frequently will prepare a cost and income analysis to substantiate how much the Postal Service is paying to lease a specific facility; and I prepare lease documentation, which is a summary of the lease transaction and includes a recommendation to the contracting officer about whether the Postal Service should accept the lease proposal.

2. In late November 1998, I began to prepare to execute a new lease with Margaret Allen to lease the Sidney Post Office, which is located at W/S FM 589, Sidney, Texas.

3. In December 1998, when I had completed negotiations, I prepared Level One documentation for the lease. (Ex. 5). That documentation summarized the present lease terms, the proposed agreement, a summary of negotiations, and my recommendation to the contracting officer. Under the heading "Changes in Lessor/USPS

Responsibilities" I noted "No change in responsibilities" because neither Ms. Allen nor the Postal Service had agreed to any changes to the responsibilities or other terms in the lease. I signed the Level One Documentation on December 9, 1998, and the Contracting Officer, Thomas Jacobs, signed indicating his acceptance on December 23, 1998. (Ex. 5).

4. Prior to December 4, 1998, I prepared a new lease proposal to send to Ms. Allen using Postal Service software designed for that purpose. Among other things that I had to do was use a drop-down menu to select riders or other attachments to include with the lease. I intentionally selected the Maintenance Rider – Lessor (M-1). At that time I apparently and inadvertently also selected the drop-down menu item called Reimbursement Tax Rider (T-1). I did not intend to select the Reimbursement Tax Rider from the drop-down menu.

5. After preparing the lease agreement, I printed it. It was my habit to check each page to be sure it was my document from the printer. I typically employed this practice because other people in my office shared the same printer, and often documents became commingled. I do not specifically recall removing a Reimbursement Tax Rider from the lease agreement that I printed for the Sidney Post Office, but I am certain that no such rider was attached to the contract I presented to the contracting officer for his signature or which I mailed to Ms. Allen. I did not notice that Section 7 of the lease stated that the lease contained a Reimbursement Tax Rider (T-1).

6. If a rider is included in a lease, the policy of this office is to physically attach the rider to the lease before it is sent to the lessor. Earlier leases between Ms. Allen and the Postal Service for the Sidney Post Office property included physically attached riders, such as the Maintenance Rider.

7. If the lease agreement that I sent to Ms. Allen had included a Reimbursement Tax Rider, and she had sent the lease agreement back with that Reimbursement Tax Rider, I would have placed the lease agreement with the Reimbursement Tax Rider into the Postal Service's lease file.

8. Ms. Allen executed the lease proposal on December 4, 1998 and returned it to this office; there was no Reimbursement Tax Rider attached to the lease she executed. The copy of the lease agreement at Exhibit 3 is the copy I placed in the contract file. (Ex. 3).

9. The contracting officer, Thomas Jacobs, executed the lease on December 23, 1998.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

William L. McMurry
William L. McMurry
Date: 11-7-2007