**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **KERIN MOTORS, INC.,** | ) | |
| Plaintiff, | ) | |
| v. | ) | **NO: 07-517** |
| **UNITED STATES,** | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, by and through its counsel, and files this Memorandum of Law in Support of its Response to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment, and would show unto this Court the following, to-wit:

FACTS

1. In May 1999, the Plaintiff, Kerin Motors, Inc., purchased the building housing the Sidney, TX post office. *Affidavit of Lawrence Magdovitz,* ¶ 3.

2. The Defendant was notified of the purchase by Plaintiff's letter of May 28, 1999, when the Plaintiff submitted the appropriate transfer paperwork to the contract technicians in the Dallas Facilities Service Office of the Defendant. *Affidavit of Lawrence Magdovitz,* ¶ 4.

3. In purchasing the Property, the Plaintiff was assigned and transferred a lease agreement with the Defendant. A true and correct copy of the Lease Agreement at issue in this matter is attached hereto as Exhibit A.

4. Thereafter, the Plaintiff, admittedly, neglected to request property tax reimbursements on the Sidney, TX post office (the "Property") until November 2006 when the Plaintiff discovered it had failed to make the tax reimbursement requests. *Affidavit of Lawrence Magdovitz*, ¶¶ 6-8.

5. The Plaintiff owns over one hundred (100) properties that are leased to the United States Postal Service ("USPS"). *Affidavit of Lawrence Magdovitz,* ¶ 7.

6. While infrequent, the large number of facilities that the Plaintiff owns occasionally causes a tax reimbursement request to not be made to the USPS in a timely fashion. *Affidavit of Lawrence Magdovitz,* ¶ 8.

7. The Plaintiff purchased the property after having been presented with the lease which states that incorporated or made a part thereof is a "Reimbursement Tax Rider (T-1)". *Affidavit of Lawrence Magdovitz,* ¶ 9.

8. In the course of purchasing over one-thousand post offices in the span of twenty years for various entities, including the Plaintiff, it is not unusual for the Plaintiff's chief executive, Lawrence M. Magdovitz, to receive Defendant's leases that do not have the tax reimbursement rider, maintenance rider or purchase option rider, attached. *Affidavit of Lawrence Magdovitz*, ¶ 10.

9. Plaintiff relies on what is specifically typed on the lease, rather than what riders are or are not attached to it. *Affidavit of Lawrence Magdovitz*, ¶ 11.

LAW AND ARGUMENT

Contract interpretation is a matter of law resolvable by summary judgment. Shearson Lehman Hutton, Inc. v. United States, 24 Cl.Ct. 770, 773 (1991). However, "while construction of an unambiguous writing is an appropriate matter for summary judgment, language that is

reasonably susceptible to more than one interpretation may be considered ambiguous and thus not appropriate for summary judgment." Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160, 169 (D.C. Cir. 1981). However, ambiguities in a document are resolved against the drafter of the agreement under the rule of *contra proferentem*. Hills Materials Co. v. Rice, 982 F.2d 514, 516 (Fed.Cir. 1992).

## I. THE PLAINTIFF, NOT THE DEFENDANT, IS ENTITLED TO SUMMARY JUDGMENT IN THIS MATTER BECAUSE THE DISPUTED LANGUAGE IN THE LEASE AGREEMENT IS NOT AMBIGUOUS, AND THE DEFENDANT ONLY SUPPORTS ITS CONTENTION WITH INADMISSIBLE PAROL EVIDENCE.

When interpreting a contract, a court looks first to its plain meaning. *See* Aleman Food Servs., Inc. v. United States, 994 F.2d 819, 822 (Fed.Cir.1993); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed.Cir.1991). The Court construes the meaning of particular terms, not according to the actual intentions of the parties at the time but, rather, objectively, as would a "reasonably intelligent person acquainted with the contemporaneous circumstances." Hol-Gar Mfg. Corp. v. United States, 169 Ct.Cl. 384, 351 F.2d 972, 975 (1965). The contract will be interpreted to fulfill the principal objective purposes of the parties, since one party's subjective, unwritten intent cannot bind the other party. *See* Firestone Tire & Rubber Co. v. United States, 195 Ct.Cl. 21, 444 F.2d 547, 551 (1971); Singer-General Precision, Inc. v. United States, 192 Ct.Cl. 435, 427 F.2d 1187, 1193 (1970). The court must give reasonable meaning to all parts of the contract, and not render any portion meaningless. *See* Fortec Constructors v. United States,760 F.2d 1288, 1292 (Fed.Cir.1985); Thanet Corp. v. United States, 219 Ct.Cl. 75, 591 F.2d 629, 633 (1979).

If parties to a contract dispute the meaning of words in the contract, the court employs the following analysis: first, the court considers the contract's plain language. *See* Northrop

Grumman Corp. v. Goldin, 136 F.3d 1479, 1483 (Fed.Cir.1998). Next, the court determines whether the words, given their ordinary meaning, create an ambiguity. *See* McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1434-35 (Fed.Cir.1996). "A contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language." Community Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1579 (Fed.Cir.1993) (citations omitted). If a contract term is unambiguous, the court cannot assign it another meaning, no matter how reasonable it may appear. *See* Triax Pacific, Inc. v. West, 130 F.3d 1469, 1473 (Fed.Cir.1997) (*citing* R.B. Wright Constr. Co. v. United States, 919 F.2d 1569, 1572-73 (Fed.Cir.1990)). "Where a contract provision possesses a clear, unambiguous meaning, the court's analysis ends." P.R. Burke Corp. v. United States, 47 Fed.Cl. 340, 346 (*citing* Textron Defense Sys. v. Widnall, 143 F.3d 1465, 1469 (Fed.Cir. 1998)).

"The parol evidence rule is a rule of substantive law, not a rule of evidence." Cooper Realty Co. v. United States, 36 Fed.Cl 284 (*citing* David Nassif Assocs. v. United States, 214 Ct.Cl 407, 419, 557 F.2d 249, 256 (1977)). "The parol evidence rule precludes the admission of prior or contemporaneous evidence seeking to add to or vary the terms of a written agreement, when the parties have adopted the written agreement as an expression of their final intent." Id. 214 Ct.Cl at 419-20, 557 F.2d at 256. "The parol evidence rule also prevents the introduction of prior or contemporaneous evidence inconsistent with the written agreement." Sylvania Elec. Prods., Inc. v. United States, 198 Ct.Cl 106, 126, 458 F.2d 994, 1005 (1972).

Under Northrop Grumman Corp., the Court must first look to the plain language of the lease in this matter which states that "7. Other Provisions: The following additional provisions, modifications, riders, layouts and/or forms were agreed upon prior to the execution and made a part hereof: Maintenance Rider – Lessor (M-1), Reimbursement Tax Rider (T-1), …" Then, the

Court must determine if the words, given their ordinary meaning, create an ambiguity under McAbee Constr., Inc. If a contract term is unambiguous, the court cannot assign it another meaning, no matter how reasonable it may appear. *See* Triax Pacific, Inc. v. West, 130 F.3d 1469, 1473 (Fed.Cir.1997) (*citing* R.B. Wright Constr. Co. v. United States, 919 F.2d 1569, 1572-73 (Fed.Cir.1990)). In this situation, the contract language is clear and unambiguous and thus the Court must find that the written terms of the lease control and this Court's analysis ends under Textron Defense Sys.

The language of the lease is not ambiguous. It clearly states that a Tax Reimbursement Rider (T-1) was "agreed upon prior to execution and made a part hereof". There is no language concerning the physical attachment of the rider to the lease agreement. The Defendant would have this Court read that provision as stating that because the rider page was not physically attached that it does not apply, and that interpretation would directly contradict the actual language of the lease.

Even if the Court finds that the contract language is ambiguous, this instance is precisely that which the parol evidence rule was formulated to address. The language of the lease, in plain English, states that a tax reimbursement rider was made a part of the lease. This language was included by the Defendant and made it through their own admitted review processes. Regardless of whether the actual Reimbursement Tax Rider (T-1) sheet was attached to the lease at some point, the language in the contract states that it is attached and this Court is bound to uphold the unambiguous terms of the contract as written. Further, the Court is required to reject the parol evidence that the Defendant has trotted out. Not only does it contradict itself, but it is unreliable due to the passage of time. The Defendant has even presented a declaration of Margaret Allen, the woman of no small years, who sold the property to the Plaintiff. The Defendant attempts to

word Ms. Allen's declaration to its cause, but in the end only succeeds in providing the most damning evidence against itself. Her declaration states "I did not communicate to Kerin Motors, Inc., that the Postal Service would reimburse Kerin Motors, Inc., for property taxes. We did not discuss the issue at all, and no one at Kerin Motors asked me about the words 'Reimbursement Tax Rider (T-1)' found in Section 7, 'Other Provisions,' of the lease." *See* Declaration of Margaret Allen.

As Plaintiff heretofore stated the language of the lease is unambiguous. Therefore, there was no need to ask Ms. Allen if the words written in English on the lease actually meant what they said at the time the Plaintiff was making its purchase from her. Further, Ms. Allen's declaration seeks to do what the Defendant cannot do itself and that is re-write the lease agreement from its current, unambiguous state to a more palatable and favorable condition as they have tried before when Plaintiff first made this claim. It is a clumsy attempt at an end-run around the parol evidence rule and the precedents concerning contract interpretation. The Defendant attempted to unilaterally issue a new lease on the Property without the Reimbursement Tax Rider provision.

The Defendant heralds its entitlement to a summary judgment by representing to the Court that

(1) the lease at issue does not contain any language obligating the Defendant to reimburse the Plaintiff for property taxes paid; and

(2) the Plaintiff cannot support its allegation that a Reimbursement Tax Rider was included in the lease because:

(a) the Plaintiff did not attach a copy of the Reimbursement Tax Rider to its Complaint; and

(b) the declarations of William McMurry, Margaret Allen and Kathy Bjurman unequivocally prove to this Court that the Defendant is correct.

The Tax Reimbursement Rider (T-1) at issue in this matter is a form rider. The same one is attached, or at least supposed to be attached, to thousands of lease agreements. In years past, the tax reimbursement language was simply a paragraph in the body of the lease. Later, it became a separate rider that typically, but not always, is included at the end of a lease with the Defendant. Over the years, that rider has undergone changes in wording and format. However, the general purpose of the tax reimbursement rider has been unchanged and functioned to reimburse the lessor for all general real property taxes paid for the leased property.

The language of this lease states that the "following riders are "made a part hereof" which incorporates the form rider by reference. The fact that the rider was not physically attached at the time is irrelevant, because the plain language of the lease controls. Because the form tax reimbursement rider is incorporated by reference, the language in that rider is deemed to be included in the lease itself, thus there is indeed language obligating the Defendant to reimburse the taxes incorporated into the lease.

As for the contention that the Plaintiff cannot support its allegation that a Reimbursement Tax Rider was included in the lease because the Plaintiff did not attach a copy of the Reimbursement Tax Rider to its Complaint and that the declarations of William McMurry, Margaret Allen and Kathy Bjurman unequivocally prove to this Court that the Defendant is correct, the Defendant is simply incorrect.

The Plaintiff cannot attach a copy of the Reimbursement Tax Rider to the lease for its Complaint because it does not possess a copy of that exact rider. To attach something "similar" or "like" the reimbursement tax rider would be a fraud upon this Court. As the Plaintiff's

president Lawrence Magdovitz stated in his affidavit, he frequently does not receive the actual riders attached to the lease, but rather looks to the actual terms of the lease agreement in Paragraph 7. See Affidavit of Lawrence Magdovitz, ¶ 11. The Plaintiff deals with facts and the fact remains that regardless of whether the non-specific, form Reimbursement Tax Rider (T-1) was physically attached to the lease agreement at one time or another is truly irrelevant. The reason is that the lease agreement itself unambiguously states that such a rider is incorporated into the entire lease agreement.

The unsworn declarations of McMurry, Allen and Bjurman do not unequivocally support the Defendant's assertions. McMurry admits that he inserted the tax reimbursement rider language in the lease. Ms. Allen admits that she never mentioned the tax reimbursement rider's mistaken inclusion in the lease to the Plaintiff. Finally, Defendant's employee, Kathy Bjurman, apparently found the "mistake" concerning the tax rider in 2002 and did not broach the subject with the Plaintiff, nor try to correct the "mistake". Further, Ms. Bjurman states in her "note to file" that she assumes the tax reimbursement rider was mistakenly included in the lease.

II. THE DEFENDANT ARGUES UNILATERAL MISTAKE BUT THE DEFENDANT CANNOT ESTABLISH THE ELEMENTS OF PROOF NECESSARY TO ESTABLISH A UNILATERAL MISTAKE.

The Defendant essentially argues in its Motion that it made a unilateral mistake. The Defendant, in order to show unilateral mistake, would have to show by clear and convincing evidence that:

> "(1) a mistake in fact occurred prior to contract award;
> (2) the mistake was a clear-cut, clerical or mathematical error or a misreading of the specifications and not a judgmental error;
> (3) prior to the award the [non-mistaken party] knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification;
> (4) the [non-mistaken party] did not request bid verification or its request for bid verification was inadequate; and
> (5) proof of the intended bid is established."

McClure Elec. Constructors, Inc. v. Dalton, 132 F.3d 709 (Fed.Cir. 1997).

The Defendant states that it never intended to attach a tax reimbursement rider to the lease for the Property. Therefore, the Defendant is alleging unilateral mistake. The Defendant cannot succeed in that defense as it fails to show by clear and convincing proof that under McClure Elec. Constructors, Inc. "prior to the award the [non-mistaken party] knew, or should have known, that a mistake had been made" and "establish proof of the intended bid". McClure Elec. Constructors, Inc. v. Dalton, 132 F.3d 709 (Fed.Cir. 1997).

The Plaintiff had no reason to believe that the inclusion of the Reimbursement Tax Rider (T-1) in the lease was a mistake because the language was clear and unambiguous. Margaret Allen, the prior lessor, states affirmatively that she never discussed the tax reimbursement rider or its alleged improper inclusion in the lease with the Plaintiff even though she negotiated and signed the lease and provided a copy to the Plaintiff during their negotiations for the purchase and sale of the Property. Further, because Plaintiff had no reason to doubt the applicability of the reimbursement tax rider, the Defendant cannot show that the Plaintiff knew or should have known that the inclusion of the Reimbursement Tax Rider was a mistake. Finally, the declarations filed by the Defendant are inadmissible parol evidence and thus cannot be used to meet the Defendant's burden of showing by clear and convincing proof that the reimbursement tax rider was not to be included in the lease under McClure Elec. Constructors, Inc.

The Defendant supports its unilateral mistake defense with unsworn declarations from William McMurry who states "I do not specifically recall removing a Reimbursement Tax Rider from the lease agreement that I printed for the [Property], but I am certain that no such rider was attached to the contract." *Declaration of William L. McMurry*, ¶ 5. However, he is certain that he selected the drop-down menu that included a Reimbursement Tax Rider (T-1) in the lease he

was printing. Id. at ¶ 4. Further, McMurry admits that he did not notice that Section 7 of the lease agreement stated it had a reimbursement tax rider attached. Id. at ¶ 5.

Another employee of the Defendant, Thomas W. Jacobs, admits that he did not recall what, if any, riders were attached to the lease for the Property when he signed it.

The Defendant states that one of its employees, Kathy Bjurman, discovered the apparent "mistake" of including the language that a Reimbursement Tax Rider (T-1) was incorporated into the lease of the Property and made a note to the file. The Defendant attached what amounts to an undocumented blurb that quite frankly the Defendant could have created recently to bootstrap its position, although in fact, it weighs heavily against the Defendant. In that "note to file", the Defendant employee admits that she is simply "assuming" that the tax rider was not part of the lease, based on the fact that the Lessors, both the Plaintiff and Margaret Allen, had not requested tax reimbursements. Yet, it is disingenuously proposed, in William McMurry's declaration, by the Defendant that it knew for a fact that there was not supposed to be a tax reimbursement rider (T-1) attached to the lease for the Property. Clearly, the Defendant had no idea in 2002 whether a tax reimbursement rider was supposed to be attached to the lease for the Property, and it begs the question then as to how the Defendant, five more years later, is now more certain that no tax reimbursement rider was to be attached. Finally, the Defendant, despite admitting that in 2002 it discovered the "mistake" in including the Reimbursement Tax Rider for the Property's lease, never brought this "mistake" to the attention of the Plaintiff until after the Plaintiff had requested the tax reimbursement. Thus, the Defendant also cannot show the fifth element of the McClure Elec. Constructors, Inc. analysis of establishing the intended [term] by clear and convincing proof. *See* McClure Elec. Constructors, Inc., 132 F.3d at 709.

## CONCLUSION

In conclusion, the Plaintiff has now answered the Defendant's Motion for Summary Judgment and shown that the Defendant is not entitled to Summary Judgment. The Plaintiff has further shown that it is entitled to summary judgment based on the fact that the contract is unambiguous and that the Defendant only offers this Court inadmissible parol evidence with which to support its own claim for summary judgment. Therefore, the Plaintiff respectfully requests that this Court grant the Plaintiff summary judgment as to the Plaintiff's claim against the Defendant and that the Court issue a writ of inquiry as to the amount of damages suffered by the Plaintiff including pre-judgment interest and costs.

Respectfully submitted this, the 24th day of December, 2007.

KERIN MOTORS, INC., Plaintiff

s/ Lawrence M. Magdovitz, II
LAWRENCE MAGDOVITZ, II (BPR 020869)
*Law Offices of Lawrence Magdovitz*
8342 Macon Road
Cordova, TN 38018
(901) 737-0500
(901) 737-1604 (fax)

CERTIFICATE OF SERVICE

I certify that I have this 24th day of December, 2007, transmitted a copy of the foregoing document to Defendant's Counsel, Stephen Lobaugh, Esq., by electronic filing only.

s/ Lawrence M. Magdovitz, II
Lawrence M. Magdovitz, II