# In the United States Court of Federal Claims

No. 07-517C
(Filed March 11, 2008)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | |
| **KERIN MOTORS, INC.,** | * | Contracts; Contract Disputes Act of 1978, 41 U.S.C. §§ 601-13 (2000); breach of contract; RCFC 56 motion for summary judgment; incorporation by reference of terms of tax rider; parol evidence rule; reformation; third-party good faith purchaser for value; summary judgment precluded by dispute of material fact. |
| Plaintiff, | * | |
| v. | * | |
| **THE UNITED STATES,** | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Lawrence M. Magdovitz, II, Cordova, TN, for plaintiff.

Stephen D. Lobaugh, United States Postal Service, Washington, DC, with whom was Acting Assistant Attorney General Jeffrey S. Bucholtz, United States Department of Justice, for defendant.

**MEMORANDUM OPINION AND ORDER**

**MILLER**, Judge.

This case, before the court after argument on cross-motions for summary judgment, calls for ascertaining whether terms that were "made a part []of" a contract resulted in incorporation by reference. The lease at issue, drafted by the United States Postal Service (the "USPS"), refers to a Reimbursement Tax Rider as "agreed upon prior to execution and made a part hereof." Def.'s Prop. Findings of Fact filed Nov. 9, 2007, Ex. 3 at 36; 2000-2005 Lease ¶ 7 (the "2000-2005 Lease"). No such tax rider physically was attached to the lease, although a rider covering the maintenance provision, also made a part of the lease, was attached. As successor in interest to the lessor who signed the 2000-2005 Lease, plaintiff sues under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-13 (2000), for reimbursement of real estate taxes for tax years 1999 through 2006, totaling $1,844.14, pursuant to the referenced Reimbursement Tax Rider. Defendant moved for summary

judgment to resist payment of this princely sum because the reference to the Reimbursement Tax Rider in the 2000-2005 Lease was a mere "clerical error." Def.'s Br. filed Nov. 9, 2007, at 1. Plaintiff, which leases of a large number of properties to the USPS, cross-moved in a robust brief, fueled more by a desire to make the USPS honor its commitments, as explained by plaintiff's counsel during argument, than to make plaintiff itself whole for loss.

By order entered on January 11, 2008, the court attempted to avert a head-on collision by suggesting that the USPS consider the rule governing admission of parol evidence and that both parties recognize that the form asserted by the USPS to be the applicable Reimbursement Tax Rider would appear to foreclose all of plaintiff's claims other than one for $286.32. See Order entered Jan. 11, 2008 ("The amount claimed by plaintiff would be affected if the Reimbursement Tax Rider, incorporated by reference in the subject lease, foreclosed claims for reimbursements made prior to 2006. Therefore, if defendant takes the position that the amount that plaintiff might recover is delimited by the incorporated language, it shall submit with its final brief a declaration attesting to authenticity.").

**FACTS**

The following facts are undisputed, unless otherwise noted. 1/ In 1969 the USPS began leasing continuously a parcel of property located in Sidney, Texas, from Margaret L. Allen and her former husband. The original 1969 Lease shows that maintenance responsibilities were allocated to the lessors, but transferred to the USPS in an amendment to the lease executed in 1982. See Def.'s Prop. Findings of Fact, Ex. 1 at 5; Amendment to 1969 Lease ¶ 2. The lease for the 1989-1992 term reassigned maintenance responsibilities back to the lessor in ¶ 5 "Other Provisions," stating that a "Maintenance Rider, p. 3," setting forth lessor's maintenance obligations, was "agreed upon prior to execution and made a part hereof." Id. Ex. 1 at 14; 1989-1992 Lease ¶ 5. The following lease executed for the 1995-2000 term included a provision stating that a "Maintenance Rider – Lessor (M-1)" was "agreed upon prior to execution and made a part hereof." Id. Ex.1 at 22; 1995-2000 Lease ¶ 7. The same provision stated that "Lessor is responsible for all maintenance and real estate taxes." Id. Both these two immediately preceding leases attached a form Maintenance Rider.

On December 4, 1998, Ms. Allen, now sole owner of the property, executed the 2000-2005 Lease with the USPS, with two five-year renewal extensions exercisable at the option of the USPS. Ms. Allen submitted a declaration stating that she did not discuss any alterations of responsibilities in the 2000-2005 Lease from those stipulated in the previous

---

1/ The facts set forth in this section, together with any included in the discussion section, constitute the court's findings pursuant to RCFC 56(d).

two leases. Decl. of Margaret L. Allen, Nov. 5, 2007, ¶ 6. USPS Real Estate Specialist William L. McMurry declares that he prepared the 2000-2005 Lease for execution by Ms. Allen. See Decl. of William L. McMurry, Nov. 7, 2007, ¶ 1. The "Level One Documentation," the USPS internal documentation prepared by Mr. McMurry that lists the terms of the current and proposed lease agreement, indicated "no change in [the] responsibilities" of the parties from the 1995-2000 Lease to the 2000-2005 Lease. See Def.'s Prop. Findings of Fact, Ex. 5 at 2. In using USPS computer software to prepare the 2000-2005 Lease, Mr. McMurry "intentionally selected the Maintenance Rider – lessor (M-1)," and "apparently and inadvertently" also selected the "Reimbursement Tax Rider (T-1)" from a drop-down program menu. See McMurry Decl. ¶ 4. Mr. McMurry explains that policy of the USPS Dallas, Texas Facilities Service Office dictates that riders included in a lease are to be attached physically to the lease before execution by the lessor, id. ¶ 6, but only the Maintenance Rider was attached to the new lease. Def.'s Prop. Findings of Fact, Ex. 3 at 40; 2000-2005 Lease Maintenance Rider (M-1). The Reimbursement Tax Rider was not attached physically to the 2000-2005 Lease that Mr. McMurry presented to the contracting officer for signature or that he mailed to Ms. Allen for execution. See McMurry Decl. ¶ 4.

The 2000-2005 Lease, signed on December 5, 1998, by Ms. Allen and Thomas W. Jacobs, USPS Contracting Officer, recited:

> 7. OTHER PROVISIONS: The following additional provisions, modifications, riders, layouts and/or forms were agreed upon prior to execution and made a part hereof:
> Maintenance Rider - Lessor (M-1), Reimbursement Tax Rider (T-1), the Postal Service will pay separately metered recurring utility charges.

Def.'s Prop. Findings of Fact, Ex. 3 at 36; 2000-2005 Lease ¶ 7. The provision does not state that the applicable riders were or should be "attached" to the operative document. The Maintenance Rider physically was attached to the document, but the Reimbursement Tax Rider was not. The 2000-2005 Lease contains one other provision that incorporates by reference an attached document. See id. Ex. 3 at 37; 2000-2005 Lease ¶ 1 ("The Lessor hereby leases to the Postal Service and the Postal Service leases from the Lessor . . . in accordance with the terms and conditions described herein and contained in the 'General Conditions to U.S. Postal Service Lease,' Section A, *attached hereto and made a part hereof*." (emphasis added)). It also contains another provision referencing obligations that are neither incorporated by reference nor attached physically to the 2000-2005 Lease. See id. Ex. 3 at 38; 2000-2005 Lease ¶ 8 ("The undersigned has completed the 'Representations and Certifications.' (See Section B).")

In 1999 Kerin Motors, Inc. ("plaintiff"), purchased the Sidney, Texas parcel and became successor in interest to the lease with the USPS. Aff. of Lawrence [M.] Magdovitz,

Dec. 24, 2007, ¶¶ 3, 5; Def.'s Prop. Findings of Fact ¶ 12. In May 2002 Kathy L. Bjurman, a USPS Real Estate Specialist and the Contracting Officer, reviewed the lease in order to renew it for the 2005-2010 term and noticed the reference to the Reimbursement Tax Rider. [First] Decl. of Kathy L. Bjurman, Nov. 8, 2007, ¶¶ 2, 4. Based on her knowledge that the prior owner had not negotiated for a tax reimbursement provision in the lease and that neither the prior owner nor plaintiff had ever requested a tax reimbursement on the Sidney, Texas property, Ms. Bjurman "believed the reference was in error." Id. at ¶ 4. She placed a note in the file describing the reference to the Reimbursement Tax Rider as a "mistake" or "clerical error." Id. Neither at that time, nor when the USPS exercised its renewal option for the 2000-2005 Lease on May 13, 2002, id. at ¶ 5, did the USPS request a modification of the terms or discuss with plaintiff the Reimbursement Tax Rider provision. In fact, not until plaintiff began seeking reimbursement in 2006, did the USPS inform plaintiff that it took the position that the reference and incorporation of the Reimbursement Tax Rider constituted a non-operative clerical error.

Mr. Magdovitz, plaintiff's President, explains that he failed to make tax reimbursement requests on the Sidney, Texas property until November, 2006, when he noticed the omission. Magdovitz Aff. ¶ 6. By letter dated November 4, 2006, to the USPS, plaintiff's counsel, Lawrence M. Magdovitz, II, requested reimbursement for $286.32 for property taxes paid for the 2006 tax year on the Sidney, Texas property. Thereafter, by letter dated November 14, 2007, plaintiff's counsel sought reimbursement of $279.12 for the 2004 tax year. In a letter dated December 20, 2006, Ms. Bjurman, as Contracting Officer, informed plaintiff that the USPS had issued a stop-payment order on a reimbursement check for the 2006 tax year. Ms. Bjurman denied any obligation to reimburse plaintiff for property taxes because 1) the reference to the Reimbursement Tax Rider in the 2000-2005 Lease was a "clerical error," and 2) neither plaintiff's predecessor in title, Ms. Allen, nor plaintiff previously had sought reimbursement thereunder.

By letter dated December 27, 2006, plaintiff's counsel responded that denial of plaintiff's request for reimbursement constituted a breach of contract and further itemized a request for reimbursement of taxes paid for the period 1999-2006, totaled to $1,846.29. 2/ On February 7, 2007, Ms. Bjurman issued a "Final Decision of Contracting Officer" (the "Final Decision"), restating the USPS's position that the reference in the lease to the Reimbursement Tax Rider was a "clerical error" and that, because plaintiff had not before

---

2/ This amount differs from the $1,844.14 sought in damages by plaintiff's complaint. Plaintiff's letter sought $175.79 in reimbursement for the 1999 tax year, whereas plaintiff's complaint lists $173.64 as the property taxes paid for the 1999 tax year. See Compl. filed July 10, 2007, ¶¶ 11. No amount is too picayune for this case.

requested a reimbursement, the provision was inoperative. The Final Decision also took the position that, even if the Reimbursement Tax Rider was operative, its terms required that a claim for reimbursement could be made only once per year and only within eighteen months after the close of the tax year, which would preclude all but the claim for tax year 2006. Id. Plaintiff thereafter filed this action in the United States Court of Federal Claims, seeking reimbursement of all property taxes paid from 1999 through 2006.

**DISCUSSION**

1. Summary judgment standards

Summary judgment is warranted when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Palahnuk v. United States, 475 F.3d 1380, 1382 (Fed. Cir. 2007). "'The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other. . . . Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the court must evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the nonmoving party.'" Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1302 (Fed. Cir. 2005) (alteration in original) (quoting Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) (internal citation omitted)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249 (1986). If no genuine issues of material fact are in dispute, the duty of the court is to "grant judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Lima Surgical Assocs. v. United States, 944 F.2d 885, 888 (Fed. Cir. 1991) (internal quotations omitted). However, summary judgment will not be granted if a "dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999). Even though litigation may seek to vindicate concerns more related to honor or principle than to recovery of a small amount of money is of no moment; the court cannot trivialize a material dispute even if its monetary significance is dwarfed by the costs of litigating it.

2. The parties' arguments

Defendant's motion for summary judgment argues that the reference to the Reimbursement Tax Rider in ¶ 7 of the 2000-2005 Lease was a "clerical error" that does "not

describe with any detail the obligations of the parties with respect to taxes." Def.'s Br. filed Nov. 9, 2007, at 6-7. "At most," defendant concedes, "the listing of the Reimbursement Tax Rider, coupled with the absence from the lease of the rider itself, constituted a patent ambiguity." Id. at 7. Defendant characterizes the absence of any Reimbursement Tax Rider attached to the lease as a "'an obvious omission,'" in the face of which the lessor is required to raise the situation to the USPS if it intends to subsequently have the issue resolved in its favor. Id. at 9 (quoting Space Corp. v. United States, 470 F.2d 536, 538 (Ct. Cl. 1972)).

In its cross-motion and opposition, plaintiff criticizes defendant for resorting to inadmissible parol evidence to show that the reference to a Reimbursement Tax Rider is a clerical error. According to plaintiff, parol evidence cannot undercut the terms of the contract which unambiguously "incorporate[] the form rider by reference." Pl.'s Br. filed Dec. 24, 2007, at 7. 3/

Defendant's reply disputes that the Reimbursement Tax Rider was incorporated by reference into the 2000-2005 Lease, contending that "Plaintiff's professed ignorance as to 'what specific material [the lease] incorporates' is fatal to its argument that the rider is incorporated by reference." Def.'s Br. filed Jan. 24, 2008, at 2 (quoting Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000)). As the Tax Reimbursement Rider produced by defendant limits recovery of paid property taxes to eighteen months from the close of the tax year – which plaintiff disputes – defendant counters that the reference to "Reimbursement Tax Rider (T-1)" cannot "'identify[] with detailed particularity what specific material it incorporate[d],'" id. at 3 (quoting Advanced Display Sys., 212 F.3d at 1282), or identify the referenced document "'beyond doubt.'" Id. (quoting Northrup Grumman Info. Tech., Inc. v. United States, 78 Fed. Cl. 45, 48 (2007)).

Defendant trumpets parol evidence to show whether the parties had knowledge of and assented to the incorporated terms and whether incorporation would result in surprise or hardship to the USPS. If the court determines that the lease does not reflect the parties' intent, defendant seeks reformation as a remedy for a "mutual mistake" and "scrivener's error." Id. at 5-6. Reformation of the lease would remove the extraneous terms.

Finally, if the court concludes that the lease incorporated the referenced Reimbursement Tax Rider, defendant argues for a finding that the form rider attached to Ms.

3/ Plaintiff contends that the doctrine of unilateral mistake is not available under the facts that defendant puts forward. Defendant's opposition brief thereafter disclaimed reliance on the doctrine of unilateral mistake, see Def.'s Br. filed Jan. 24, 2008, at 2, so the court need not address it.

Bjurman's second declaration is the applicable version, which would limit recovery to one request per calendar year and to an eighteen-month period following the end of the applicable tax year, *i.e.* the claim for the 2006 tax year in the amount of $286.32. 4/ Defendant concedes that plaintiff sufficiently documented its reimbursement requests for the 2004, 2005 and 2006 tax years, as required by defendant's proffered form rider. See id. at 8 ("Plaintiff did not submit 'copies of the front and back of the complete tax bill issued by the taxing authority' or 'satisfactory proof of payment' for any tax year except the 2004, 2005, and 2006 tax years." (quoting Ex. attached to Second Decl. of Kathy L. Bjurman, Jan. 24, 2008)).

3. Incorporation of reimbursement tax rider

The controlling legal issue to be resolved is whether the reference to "Reimbursement Tax Rider (T-1)" contained in ¶ 7 of the 2000-2005 Lease incorporated by reference an obligation on the part of USPS to reimburse plaintiff's property taxes. Whether a patent ambiguity exists from the failure to attach the rider or whether reformation is available are secondary issues that must be addressed only if the court concludes that the Reimbursement Tax Rider was incorporated by reference into the 2000-2005 Lease.

Plaintiff characterizes the Reimbursement Tax Rider, as follows:

> The Tax Reimbursement Rider (T-1) at issue in this matter is a form rider. The same one is attached, or supposed to be attached, to thousands of lease agreements. . . . Over the years, that rider has undergone changes in wording and format. However, the general purpose of the tax reimbursement rider has been unchanged and functioned to reimburse the lessor for all general real property taxes paid for the leased property.

Pl.'s Br. filed Dec 24, 2007, at 7. Yet, plaintiff "cannot attach a copy of the reimbursement tax rider to the lease for its Complaint because it does not possess a copy of *that exact rider*.

---

4/ Defendant alternatively argues that,

> even if the Court were to waive the rider's explicit provision allowing only one request for reimbursement per year and permit Plaintiff's third claim, dated December 27, 2006, to count as its claim, Plaintiff is only eligible for reimbursement of property taxes paid for 2005 and 2006 tax years due to the 18-month limit on reimbursement requests.

Def.'s Br. filed Jan. 24, 2008, at 9.

To attach something 'similar' or 'like' the reimbursement tax rider would be a fraud upon this Court." Id. (emphasis added).

In its January 11, 2008 order, the court directed the parties to address the identity of the applicable "Reimbursement Tax Rider (T-1)" form. Defendant proposed to "identify the version of the Reimbursement Tax Rider that was in effect in the Dallas, Texas Facilities Service Office in December 1998," submitting with a second declaration of Ms. Bjurman, a form "(T-1)", originally dated "Jan. 1995," but "amended by Dallas FSO Sept. 98." See Ex. attached to Second Decl. of Kathy L. Bjurman, Jan. 24, 2008. Defendant's proffered Reimbursement Tax Rider limits a lessor's reimbursement of property taxes to those claimed within eighteen months of the end of the tax year and restricts lessor to one reimbursement request per calendar year. See id. Plaintiff disputes the applicability of defendant's "(T-1)" by submitting two different Reimbursement Tax Riders (T-1), one with a date of "Jan. 1996," used in connection with a Terlton, Oklahoma property serviced by the same Dallas, Texas contracting office. See Pl.'s Br. filed Feb. 12, 2008, Ex. B at 5. The Exhibit B Reimbursement Tax Rider does not limit the time for submission of or amount of reimbursement requests. See id. 5/ This "Jan. 1996" document calls into question defendant's form rider, which indicates that a "Jan. 1995" form was amended in "Sept. 98." Which applied cannot be determined because both were operative in December 1998 when the 2000-2005 Lease was executed.

Contract interpretation is a question of law and thus presents an appropriate question for resolution on summary judgment, absent a dispute as to material fact. Varilease Tech. Group, 289 F.3d at 798. The court's examination begins with the plain language used by the parties in contracting. See Textron Defense Sys. v. Widnall, 143 F.3d 1465, 1468 (Fed. Cir. 1998). When the contract language is unambiguous, the court's inquiry is at an end, and the plain language of the contract controls. See id. But, before the terms of an agreement may be interpreted, the court must identify the terms. A determination of whether an extrinsic document was incorporated by reference is a question of law. Cook Biotech, Inc. v. Acell, Inc., 460 F.3d 1365, 1376 (Fed. Cir. 2006) (citing Advanced Display Sys., 212 F.3d at 1282). "Incorporation by reference requires that the document to be incorporated be referred to and described in the contract so that the referenced document may be identified beyond doubt." Northrup Grumman, 78 Fed. Cl. 45, 48 (2007); see also Advanced Display Sys., 212 F.3d at 1282 ("To incorporate material by reference, the host document must identify with detailed

---

5/ Plaintiff also attached a second Reimbursement Tax Rider (T-1) form dated February 2004, which limits a lessor's reimbursement of property taxes to those claimed within eighteen months of the close of the tax year and those submitted in one request per calendar year. See Pl.'s Br. filed Feb. 12, 2008, Ex. C at 1.

particularity what specific material it incorporates and clearly indicate where that material is found in the various documents."). "'Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'" Northrup Grumman, 78 Fed. Cl. at 48 (quoting Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003)).

Given the several versions of reimbursement tax riders used by the USPS and the doubts they reveal as to the period during which any one form was applicable to leases entered into by the Dallas, Texas contracting office, a genuine dispute of material fact exists as to the applicable "Reimbursement Tax Rider (T-1)" and its contents. Beyond the factual dispute as to the applicable rider, however, the parties' filings also raise a legal issue: to the extent that multiple "(T-1)" forms are potentially applicable (and it is impossible to identify which of several forms is the referent for "Reimbursement Tax Rider (T-1)" in the 2000-2005 Lease), the law governing the effect of the reference as an incorporation will apply. If the evidence adduced at trial shows that multiple versions of "Reimbursement Tax Rider (T-1)" were in use by the Dallas, Texas office at the time the 2000-2005 Lease was executed, the reference does not give the requisite indication of which rider's terms were operative, incorporation by reference fails, and the terms cannot be part of the lease.

During argument the court explained to the USPS the weaknesses revealed by its six declarations (for example, the impact on the availability of reformation of Ms. Bjurman's failure to notify plaintiff for a four-year period after discovery of the alleged clerical error; the patency of any ambiguity when the 2000-2005 Lease required no attachments and the lease itself specified when a document was to be attached; whether the parol evidence rule contemplates ascertainment of the original contracting parties' intent when it is asserted against a subsequent bona fide purchaser for value that takes subject to a lease; and whether laches can apply when the applicable rider itself contains a limitations period). Plaintiff has been made aware that any recovery will be limited by the terms of the applicable rider – both as to the number of relevant claims that may be presented in any one calendar year and the period within which a claim must be filed.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment are denied without prejudice.

2. The court finds, pursuant to RCFC 56(d), that the facts that appear herein are without substantial controversy. The court also finds that the amount of damages claimed by plaintiff for tax years 2004, 2005, and 2006 is without controversy.

3. All discovery shall be completed by April 11, 2008.

4. The meeting of counsel pursuant to RCFC Appendix A ¶ 13 shall be held by April 14, 2008.

5. The parties' filings pursuant to RCFC Appendix A ¶¶ 14(a), (b), 15, and 16 shall be made simultaneously by April 22, 2008.

6. The pretrial conference shall be held at 3:00 p.m. on Wednesday, April 30, 2008, in the Howard T. Markey National Courts Building. Both counsel shall notify the court at 202/357-6620 by April 23, 2008 if they wish to participate by telephone conference call to be placed by the court.

7. Trial, not to exceed two days, shall commence at 10:00 a.m. on Tuesday, May 6, 2008, in the U.S. District Court for the Northern District of Texas, 1100 Commerce Street, Dallas, TX.

s/ Christine O.C. Miller

________________________________

**Christine Odell Cook Miller**
Judge